UNITED STATES of America, Plaintiff-Appellee,

v.

Albert Lee PURCELL, Shon Purcell, Defendants-Appellants.

Nos. 99-11537, 99-11538.

United States Court of Appeals,

Eleventh Circuit.

Jan. 4, 2001.

Appeals from the United States District Court for the Southern District of Florida. (No. 98-14064-CR-JCP), James C. Paine, Judge.

Before TJOFLAT, HILL and POLITZ[*], Circuit Judges.

HILL, Circuit Judge:

Albert Purcell and Shon Purcell were indicted for conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Both defendants moved to suppress the cocaine base that was seized in a search of their car. After the motion was denied, both defendants pled guilty but reserved their right to bring this appeal of the denial.

I.

On Saturday, November 7, 1998, Albert Purcell and Shon Purcell were traveling on I-95, driving at 70 miles per hour, less than seven car lengths behind the car in front of them.[1] Deputy James Warren of the Martin County Sheriff's office observed their vehicle and stopped it for following too closely.[2]

Deputy Warren and Shon Purcell, the driver of the car, both stepped out of their vehicles. Deputy Warren asked to see Purcell's driver's license and registration. Purcell handed the deputy his driver's license and a rental agreement for the car he was driving. The rental agreement was not in Shon Purcell's name, and although he was listed as an additional driver, his name had been crossed out.

---

[*]Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1]These facts were established either in the videotape of the incident or by testimony at the hearing on the motion to suppress. They are not contested.

[2]Section 316.0895 of the Florida Statutes provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon, and the condition of, the highway."

Deputy Warren also obtained identification from two other people in the stopped car, Albert Purcell and Shon's wife, Sharolyn, and he used his police radio to request a computer check on the car's occupants. While he was waiting for this information, Deputy Warren began writing a warning citation to Shon Purcell for following too closely. Prior to asking Purcell to sign the citation, Deputy Warren asked him if he had ever been arrested. Purcell replied that he had and that the arrests were drug related. The deputy then asked Purcell if he had "any narcotics, weapons, firearms, contraband, anything like that in the car." Purcell replied that he did not. At this point, approximately fourteen minutes into the traffic stop, Shon Purcell consented to a search of the car, saying "I've got nothing to hide."[3]

At about the same time, Deputy Robert Kohl arrived at the scene.[4] Prior to searching the car, the two deputies "patted down" the Purcells to ensure they were not armed and then told them to stand by the patrol car while the deputies searched the car. During the search, Deputy Kohl observed white powder on the floorboard of the front passenger compartment. He also observed a bag protruding from underneath the dashboard, above the white powder, which appeared to contain crack cocaine.

After finding the cocaine, Deputy Kohl and Deputy Warren placed Shon and Albert Purcell under arrest. Deputy Warren put the Purcells in the back of his patrol car. The audio microphone feature of his car's video camera was on and it recorded the Purcells discussing who should take responsibility for the cocaine and what they should say.

After their motion to suppress was denied, the Purcells pled guilty, but preserved their right to appeal the denial. On appeal, they argue that the cocaine should have been inadmissible against them because the search of their car was the product of an unconstitutional detention and involuntary consent.[5]

II.

The Fourth Amendment protects individuals from unreasonable search and seizure. A traffic stop

---

[3]Although there is disagreement over whether the deputy asked or Purcell volunteered, there is no dispute that Purcell consented to the search.

[4]Deputy Warren called for "routine" backup upon initiating the stop.

[5]The Purcells also argue that the initial stop was unsupported by probable cause that a traffic violation had occurred. The Purcells testified that their car was about three car lengths behind the vehicle ahead of it. The district court found that such a distance could reasonably have been interpreted by Deputy Warren as violating the statute. A law enforcement officer may legally stop an automobile traveling on the highways if he has probable cause to believe that a traffic violation has occurred. *See Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). We find no error in this result.

is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Because a routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest. *See Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Therefore, we analyze the legality of these stops under the standard articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Tapia,* 912 F.2d 1367, 1370 (11th Cir.1990); *United States v. Hardy,* 855 F.2d 753, 758 (11th Cir.1988). Under *Terry,* an officer's actions during a traffic stop must be "reasonably related in *scope* to the circumstances which justified the interference in the first place." 392 U.S. at 20, 88 S.Ct. 1868 (emphasis added). Furthermore, the *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop. *United States v. Pruitt,* 174 F.3d 1215, 1219 (11th Cir.1999). The traffic stop may not last "any longer than necessary to process the traffic violation" unless there is articulable suspicion of other illegal activity. *United States v. Holloman,* 113 F.3d 192, 196 (11th Cir.1997).

The Purcells claim that their detention exceeded both the *duration* and the *scope* of a constitutional traffic stop. They contend that the *duration* of a permissible traffic stop was exceeded when Deputy Warren prolonged the detention to wait for information on the criminal histories of the car's occupants. They contend that the *scope* of the stop was impermissibly enlarged when the officer asked Shon Purcell whether he had any "firearms, guns, or narcotics" in the car. Both of these contentions are issues of first impression in this circuit. We shall consider each of them in turn.

A.      *The length of the detention*

The district court found, and the videotape confirms, that approximately fourteen minutes elapsed between the time Deputy Warren and Shon Purcell exited their cars and the point at which Purcell consented to a search.[6] A detention of fourteen minutes is certainly not unreasonable on its face. The Purcells argue, however, that the officer had finished writing the warning citation several minutes before, but prolonged the detention in order to wait for the results of the computer check on the Purcells' criminal histories. They argue that the detention became unconstitutional when it lasted longer than necessary to process the traffic violation. *Holloman,* 113 F.3d at 196.

---

[6]At that point their encounter either became consensual, if the consent was valid, or else it became unconstitutional when the officer began a warrantless search.

It is well established that officers conducting a traffic stop may "take such steps as [are] reasonably necessary to protect their personal safety." *United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). This includes conducting a protective search of the driver, *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the passengers, *id.,* and the vehicle, *Michigan v. Long,* 463 U.S. 1032, 1049-51, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The officer may seize any contraband, including weapons, in plain view. *Id.* at 1049, 103 S.Ct. 3469. The officer may use a flash light to illuminate a vehicle's dark interior. *United States v. Dunn,* 480 U.S. 294, 305, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The officer may also prolong the detention to investigate the driver's license and the vehicle registration, *Prouse,* 440 U.S. at 657-59, 99 S.Ct. 1391, and may do so by requesting a computer check. *United States v. Simmons,* 172 F.3d 775, 778 (11th Cir.1999); *Pruitt,* 174 F.3d at 1219. *See also United States v. Hunnicutt,* 135 F.3d 1345, 1349 (10th Cir.1998); *Foote v. Dunagan,* 33 F.3d 445, 448-50 (4th Cir.1994); *United States v. Shabazz,* 993 F.2d 431, 437 (5th Cir.1993); *McFadden v. United States,* 814 F.2d 144, 147 (3d Cir.1987).

Many courts have recognized that knowledge of the criminal histories of a vehicle's occupants will often be relevant to that safety. *United States v. Wood,* 106 F.3d 942, 945 (10th Cir.1997) (criminal history check justified for officer safety); *United States v. Finke,* 85 F.3d 1275, 1280 (7th Cir.1996)(where the request for a criminal history is reasonably contemporaneous with the license and warrant check, it is both reasonable and justified); *United States v. Crain,* 33 F.3d 480, 483 (5th Cir.1994) (approving computer check which included request for criminal history); *United States v. McManus,* 70 F.3d 990, 993 (8th Cir.1995) (approvingly noting use of National Crime Information Center (NCIC) criminal history check in routine traffic stops to support using of same check in vehicle identification number investigation).[7] In the context of "the tragedy of the many officers who are shot during routine traffic stops each year, the almost simultaneous computer check of a person's criminal record, along with his or her license and registration, is reasonable and hardly intrusive." *United States v. McRae,* 81 F.3d 1528, 1535-36 n. 6 (10th Cir.1996).

We agree. The request for criminal histories as part of a routine computer check is justified for

---

[7]The Purcells offer only one case in support of their contention that a request for criminal histories is irrelevant and any delay caused by waiting for the information transforms a legal traffic stop into an illegal de facto arrest, *United States v. Lee,* 73 F.3d 1034 (10th Cir.1996). *Lee,* however, does not support this conclusion. *Lee* holds that knowledge of a person's criminal history does not establish *probable cause* to further detain and search his car. *Id.* at 1039. But that is not the issue here. The government does not claim that knowledge of the Purcells' extensive criminal histories established probable cause to detain the Purcells or search their car.

officer safety. It is both reasonable and minimally intrusive. Indeed, in most cases, the occupants of the car will not even know what information has been requested as part of the computer check. The inclusion of such a request in an otherwise valid computer check does not render it unconstitutional.

In this case, the officer testified without contradiction that highway stops on Interstate 95 are "very high risk." He requested a criminal history check as part of his routine computer check. He was still waiting for the results of the computer check and had not yet given the citation to Purcell to sign when he asked for and received Purcell's consent to search the vehicle. The traffic stop, therefore, had not concluded prior to the consent to search, and the detention continued to be supported by the facts that justified its initiation. *See United States v. Zucco,* 71 F.3d 188, 190 (5th Cir.1995) (detention supported by facts justifying its initiation while officer waits for computer check); *Shabazz,* 993 F.2d at 437(detention does not exceed its original scope while officers waiting for results of computer check).

Although some of these cases imply that requesting a criminal history check is a reasonable, constitutional part of all or most traffic stops, *see McRae,* 81 F.3d at 1536 n. 6, we believe that, as in most issues relating to the constitutionality of a traffic stop, such bright-line rules are inadvisable. The Supreme Court has "long held that the 'touchstone of the Fourth Amendment is reasonableness.' " *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (quoting *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). Reasonableness is measured by examining the totality of the circumstances. *Id.* Rigid time limitations and bright-line rules are generally inappropriate. *Sharpe,* 470 U.S. at 685, 105 S.Ct. 1568; *Hardy* 855 F.2d at 759.

Under some circumstances a criminal record request might lengthen a traffic stop beyond what is reasonable in a particular case. After a certain point, this might constitute an unreasonable detention. *See Finke,* 85 F.3d at 1280 ("Unless technology permits criminal record requests to be conducted reasonably contemporaneously with the license and warrant checks normally solicited, we are reluctant to say such checks are always reasonable or justified in the average traffic stop.") So long as the computer check does not prolong the traffic stop beyond a reasonable amount of time under the circumstances of the stop, the inclusion of a request for criminal histories does not constitute a Fourth Amendment violation.

In this case, the district court determined that Shon Purcell consented to a search of his car approximately fourteen minutes into the traffic stop. These initial fourteen minutes, therefore, are the only

ones relevant to a determination whether the duration of the traffic stop was reasonable.[8] Fourteen minutes is not an unreasonable amount of time for a traffic stop. We have approved traffic stops of much longer duration. *See Hardy,* 855 F.2d at 761 (approving traffic stop of fifty minutes duration). *See also United States v. Shareef,* 100 F.3d 1491, 1502 (10th Cir.1996) (30 minute wait for computer check during a traffic stop reasonable). *Cf. United States v. Place,* 462 U.S. 696, 709, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (90 minutes "probably" too long for a *Terry* stop).

The district court also found that the deputy appeared to be waiting on further information at approximately the eleven minute mark.[9] Therefore, the request for the criminal histories prolonged the traffic stop, at most, by approximately three minutes. We conclude that this delay was *de minimis* in the context of the totality of the circumstances of this traffic stop. Accordingly, we hold that the duration of the traffic stop did not violate the Fourth Amendment.

B.      *The scope of the traffic stop*

The Purcells argue that Deputy Warren exceeded the scope of a permissible traffic stop when he asked them whether they had guns, firearms, or narcotics in their car. They rely on a line of cases in the Tenth Circuit which severely limit the kind of questions which are permissible in a routine traffic stop, including a limitation on questions regarding contraband and weapons. *See United States v. Holt,* 229 F.3d 931, 940 (10th Cir.2000) (question exceeds reasonable scope of traffic stop absent reasonable suspicion of illegal activity or reasonable safety concerns); *United States v. Jones,* 44 F.3d 860, 872 (10th Cir.1995) (holding that questions regarding transportation of contraband, are justified only if the officer has reasonable suspicion of illegal activity); *United States v. Turner,* 928 F.2d 956, 959 (10th Cir.1991) (holding that officer must have reasonable and articulable suspicion to question the driver about drugs or weapons).

On the other hand, the Fifth Circuit has held that "a police officer's questioning, even on a subject unrelated to the purpose of the top, is [not] itself a Fourth Amendment violation." *Shabazz,* 993 F.2d at 436. "Mere questioning ... is neither a search nor a seizure." *Id.* (quoting *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). In their view, the issue regarding "unrelated" questions concerns not the content of the questions, but their impact on the duration of the stop:

---

[8]Once Shon Purcell agreed to the search, the remainder of the detention was consensual so long as the scope of the search did not exceed the consent given. The Purcells do not raise any issue regarding the scope of the search.

[9]This finding is supported by the videotape.

> Thus, when a police officer reasonably suspects only that someone is carrying a gun and stops and frisks that person, the officer, after finding nothing in a pat down, may not thereafter further detain the person merely to question him about a fraud offense. This is not because the questioning itself is unlawful, but because at that point suspicion of weapons possession has evaporated and no longer justifies further detention.

*Id.* Therefore, only unrelated questions which unreasonably prolong the detention are unlawful; "detention, not questioning, is the evil at which *Terry's* [prohibition] is aimed." *Id.* Questions which do not extend the duration of the initial seizure do not exceed the scope of an otherwise constitutional traffic stop. In *Shabazz,* the court approved a traffic stop during which the officer questioned the occupants of the car about their travel plans, holding that the duration of a routine traffic stop was not exceeded because the officer was waiting for the results of the computer check when he asked the "unrelated" questions.[10]

We have concluded that, under either of these tests, Deputy Warren's question about guns or drugs was permissible. He had stopped a vehicle in a very high crime corridor, where armed drug couriers ply their trade daily. The driver, Shon Purcell, produced a rental car contract signed by a party not in the car. Although it listed Shon Purcell as an additional driver, his name had been scratched out. While writing the citation, he asked Shon Purcell if he had a record and Purcell admitted that he did and that it was drug related. At that point, even if his suspicions did not arise to the level of "articulable,"[11] reasonable safety concerns justified Deputy Warren in asking Purcell whether he had any firearms, guns or drugs in the car. *See McRae,* 81 F.3d at 1536 (vague rental car arrangements plus knowledge of prior criminal involvement permit the officer to ask about contraband and weapons).

Furthermore, the question regarding weapons was asked while the officer was still writing out the citation and awaiting the results of the computer check.[12] Thus, the unrelated question did nothing to extend

---

[10]In *United States v. Walker,* the Tenth Circuit held that questioning unrelated to the circumstances of the initial stop rendered the detention illegal, but noted that "this case would be changed significantly *if the officer asked the same questions while awaiting the results of an NCIC ... license or registration inquiry.*" 933 F.2d 812, 816 n. 2 (10th Cir.1991) (emphasis added). After *Holt,* it is unclear whether this dicta carries any weight. 229 F.3d at 944 n. 4 (questioning unrelated to purpose of stop unconstitutional even though officer still writing out citation and computer check not completed).

[11]Deputy Warren testified that, based upon his training and experience, he was suspicious of the circumstances involved in this traffic stop: third-party car, Purcells name scratched out as valid driver, point of origin in Miami, en route to North Carolina, woman and baby in car ("drug couriers often put women and babies in car to disguise their activity") and criminal records involving drugs and guns. The government does not argue and we do not decide whether these circumstances would have supported a finding of "articulable suspicion."

[12]Shon Purcell testified that Deputy Warren told him he was "waiting on information" at the point he gave his consent to the search.

the duration of the initial, valid seizure. The detention continued to be supported by the facts that justified its initiation. *See Shabazz,* 993 F.2d at 437. Nor was the detention of an excessively long duration. The total time consumed by the traffic stop, prior to the consent to search, was fourteen minutes. This duration imposed "no significant Fourth Amendment hardship." *See Shabazz,* 993 F.2d at 438; *see also Hardy,* 855 F.2d at 761 (fifty minute traffic stop not too long). Under these circumstances, the officer's question did not offend the Constitution.

III.

The government concedes that there was not sufficient probable cause to support a warrantless search of the Purcells' car. Therefore, even if their detention was not unconstitutional, the search of their car was illegal unless Shon Purcell voluntarily consented to it. The Purcells claim that he did not.

An officer conducting a routine traffic stop may request consent to search the vehicle. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Simmons,* 172 F.3d at 778. A consensual search is constitutional if it is voluntary; if it is the product of an "essentially free and unconstrained choice." *Schneckloth,* 412 U.S. at 225, 93 S.Ct. 2041. *See also Hudson v. J.T. Hall,* 231 F.3d 1289, 1296 (11th Cir.2000) (citing *United States v. Garcia,* 890 F.2d 355, 360 (11th Cir.1989)). In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances. *Schneckloth,* 412 U.S. at 248-49, 93 S.Ct. 2041. A district court's determination that consent was voluntary is a finding of fact, that will not be disturbed on appeal absent clear error. *Garcia,* 890 F.2d at 359 (where voluntariness determined from conflicting testimony, district court's finding affirmed absent clear error).

In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found. *Hudson, id.; see also Shabazz,* 993 F.2d at 438.

In this case, there was no claim that Officer Warren threatened force or violence against the Purcells or even that he was verbally abusive. Neither was there any claim that Officer Warren suggested to Shon Purcell that he had no right to refuse. Shon Purcell testified that Deputy Warren did not threaten him, and that he told Warren that he could look in the car because "I got nothing to hide." Based upon these facts, the district court concluded that Shon Purcell voluntarily consented to the search of his vehicle.

Our review of the record and the videotape support this conclusion. There is no indication on the videotape that Shon Purcell was intimidated or browbeaten into consenting to the search. The encounter appears quite low-key and professional. There is no indication that Purcell did not understand he could refuse the search. Thus, the district court's finding that Purcell's consent was voluntary does not appear to be clearly erroneous.

The Purcells contend, however, that, despite all this, we must hold that the consent was involuntary. They suggest two reasons why. First, Deputy Warren had not returned Purcell's driver's license when Purcell consented to the search. Since Purcell was not "free to go" when he consented, the Purcells contend that his consent was involuntary.[13] They also argue that Purcell's consent was involuntary because Deputy Warren did not specifically inform him that he could refuse.

We disagree. The Supreme Court has specifically rejected the argument that consent to a search cannot be valid unless the defendant knew that he had a right to refuse the request:

> While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent.

*Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041. "And just as it 'would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning,' so too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." *Robinette,* 519 U.S. at 39-40, 117 S.Ct. 417 (citations omitted) (quoting *Schneckloth,* 412 U.S. at 231, 93 S.Ct. 2041).

Additionally, whether the officer had returned the driver's license of the defendant at the time the defendant consented to the search is a factor we shall consider in evaluating the totality of the circumstances, but it is not a litmus test for voluntary consent. *See Bostick,* 501 U.S. at 435-36, 111 S.Ct. 2382 (even if detainee does not feel "free to leave" under certain circumstances, consent may still be voluntary). The

---

[13]The Purcells cite two cases from our circuit in support of this contention: *Pruitt,* 174 F.3d 1215 and *Tapia,* 912 F.2d 1367. Neither of these cases, however, even involved the issue of the voluntariness of the defendant's consent. In *Pruitt,* the defendant did not consent to the search, 174 F.3d at 1218, and in *Tapia,* the government did not assert that the defendant voluntarily consented to the search. 912 F.2d at 1369.

The Purcells also claim that this is the rule in the Tenth Circuit. *Hunnicutt,* 135 F.3d at 1349 (consent to search not voluntary when officer retained driver's license). But we are not certain that this is a rule there either. *See United States v. Soto,* 988 F.2d 1548, 1557-58 (10th Cir.1993) (consent to search voluntary even though officer retained license and registration at the time consent given).

undisputed testimony was that Deputy Warren was giving the citation to Shon Purcell to sign when he asked for and received consent to search the vehicle. Under these circumstances, it was not unreasonable for the officer to continue to have Purcell's license in his possession. Nor did it indicate anything more than that the citation writing process was not yet complete. We hold, therefore, that Shon Purcell voluntarily consented to the search of his vehicle.

IV.

For the foregoing reasons, we conclude that the traffic stop at issue in this case did not offend the Constitution in either its duration or its scope. We also hold that the consent to search the vehicle in this case was given freely and voluntarily. Accordingly, the judgment of the district court is due to be

AFFIRMED.