[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11262
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 21, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00131-CR-RDP-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER CHRISTIAN BOULETTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(February 21, 2008)**

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Peter Christian Boulette appeals his convictions for possession with intent to

distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), possession with intent to distribute a substance containing methamphetamine, in violation of § 841(a)(1) and (b)(1)(B), possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Boulette argues that the district court erred in finding that his girlfriend, Victoria Thompson, voluntarily consented to a search of his apartment, and therefore, it improperly denied Boulette's motion to suppress evidence seized pursuant to that search. Upon review of the record and the parties' briefs, we discern no error. Accordingly, we AFFIRM.

## I. BACKGROUND

On March 31, 2005, agents of the Drug Enforcement Administration ("DEA") Task Force in Birmingham, Alabama arrested Boulette during a sting operation in which Boulette gave a cooperating informant 220.7 grams of methamphetamine in exchange for $7,750 in marked bills. Shortly after Boulette's arrest, Guy Warren, an agent with the Alabama Bureau of Investigation ("ABI") who was also assigned to the DEA Task Force in Birmingham, was dispatched to Boulette's apartment, where he was later joined by Agent Darryl Thistle. At approximately 10:40 p.m., Agent Warren knocked on the door to Boulette's

2

apartment, and Thompson, Boulette's live-in girlfriend, answered the door. Agent Warren, who was wearing an ABI windbreaker, identified himself as a police officer, and explained to Thompson that Boulette had just been arrested with a large quantity of methamphetamine. Agent Warren told Thompson that while conducting surveillance earlier that day, he had observed Boulette leaving the apartment. Agent Warren asked Thompson if he could come in and talk to her, and Thompson agreed.

During their conversation, Agent Warren asked Thompson for her consent to search the home. At the hearing on Boulette's oral motion to suppress evidence seized during the search of his apartment, Agent Warren testified that Thompson initially was reluctant to consent to the search. Agent Warren told Thompson that the authorities did not have any evidence that she was involved in Boulette's drug-related activities, but they wanted to search the apartment to remove any guns or drugs that may be present. Thompson said that she did not believe that there were any guns in the apartment and called her attorney in Mississippi. After speaking to him for approximately ten minutes, Thompson gave the telephone to Agent Warren, who explained the situation to Thompson's attorney. After Thompson again spoke to her attorney for about three minutes, she told Agent Warren, "you can go ahead and search." R2 at 61.

3

Agent Warren further testified that, notwithstanding her verbal consent to search the apartment, Thompson declined to sign a consent form because she did not want Boulette to know she had given consent. After Thompson again verbally agreed to the search, Agent Warren noted Thompson's verbal consent on the consent form and signed it, with Agent Thistle witnessing the signature.

At the suppression hearing, Thompson denied ever giving verbal consent to the search. She stated that she told the agents that she did not feel comfortable giving consent to the search because her name was not on the lease; she did agree however, that she consented to a subsequent search of a storage unit in her name. Thompson also testified that she called her attorney after telling the agents that she did not feel comfortable. When asked by the district court why she called her attorney, Thompson replied that the agents were very persistent and she felt as if they were "backing [her] into a corner." R2 at 84. When shown the consent form, Thompson stated that she did not recognize it, and denied telling Agent Warren that she did not want to sign the form for fear that Boulette would learn of her consent. On rebuttal, Agent Warren denied doing anything to make Thompson feel uncomfortable or backed into a corner, and that in fact, the two had discussed Thompson's ill father, whom she and Boulette were planning to visit in Texas.

The court orally overruled Boulette's motion to suppress, finding that

Thompson had common authority to consent to the search of the apartment. The court also found Agent Warren's testimony credible and Thompson's testimony not credible, to the extent that it conflicted with Agent Warren's version of the facts. In doing so, the court relied on Thompson's answers and body language, the specificity of Agent Warren's responses, and that Thompson called her attorney and allowed Agent Warren to talk to him. The court concluded that Thompson indeed gave Agent Warren consent after speaking to her attorney.

## II.  STANDARD OF REVIEW

"Review of a district court's denial of a motion to suppress is a mixed question of law and fact." *United States v. Delancy*, 502 F.3d 1297, 1304 (11th Cir. 2007). Accordingly, we accept the district court's factual findings as true unless clearly erroneous, construing the evidence in the light most favorable to the prevailing party below, and we review the district court's interpretation and application of the law *de novo*. *Id.*

## III.  DISCUSSION

Boulette maintains that Thompson did not voluntarily consent to the search, and therefore, the search of the apartment was illegal, and the evidence derived therefrom should have been suppressed.

Although the Fourth Amendment shields one's home from unreasonable

5

searches and seizures by law enforcement officers, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, — U.S. — , 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006). One "specifically established and well-delineated" exception is a warrantless search made pursuant to consent. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967). Specifically, a warrantless search does not violate the Fourth Amendment where there voluntary consent is given by a person with authority. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797, 111 L. Ed. 2d 148 (1990).

Consent to a search is voluntary "if it is the product of an "essentially free and unconstrained choice.'" *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 2047, 36 L. Ed. 2d 854 (1973)). The government bears the burden of proving the existence of valid consent—that the consent was given voluntarily and not in acquiescence to a claim of lawful authority. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

Boulette argues that the testimony taken at the suppression hearing clearly showed that Thompson gave neither written nor verbal consent to search the apartment, and that Thompson's testimony was credible because she gave specific

information regarding her reaction to the presence of agents at her residence late at night.

We have recognized that consent "usually turns on credibility choices resulting from conflicting testimony." *United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996) (internal quotations marks omitted). Credibility determinations are within the province of the fact finder "because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v.Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). In our review, "'[w]e must accept the evidence unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it.'" *Id.* (alteration in original) (quoting *United States v. Eddy*, 8 F.3d 577, 580 (7th Cir. 1993)).

We have instructed district courts to conduct a proper credibility determination, which includes an examination of internal consistencies of a witness's testimony, as well as her candor or demeanor on the stand. *Id.* Accordingly, in evaluating the factual versions of events between a law enforcement officer and a witness, we should defer to a lower court's determinations "unless [its] understanding of the facts appears to be unbelievable." *Id.* (internal quotations marks omitted).

In denying Boulette's motion to suppress, the district court determined, after observing the body language and the specificity of the responses from both witnesses, that Thompson's testimony was not credible to the extent it conflicted with Agent Warren's testimony. We find that the district court examined the witnesses' testimony and made a proper credibility determination. Therefore, we conclude that the court did not clearly err in finding that Thompson consented to the agents' search of the apartment.

Boulette also argues that the agents' entry into the residence was prompted by a "show of authority" that negated any possible consent to search because it was late at night, and Thompson, who was alone in the apartment, was in a "vulnerable subjective state." Whether an individual voluntarily consented to a warrantless search is a question of fact that must be determined by the totality of the circumstances. *Purcell*, 236 F.3d at 1281. We have identified the following factors as relevant in determining whether consent was voluntarily given: (1) whether the individual felt free to leave; (2) the exercise of coercive police procedures; (3) the extent of the individual's cooperation with the police; (4) the individual's awareness of her right to refuse consent, and whether the individual, in fact, could refuse consent; (5) the individual's education and intelligence; and (6) the individual's belief that no incriminating evidence will be found. *Ramirez-*

*Chilel*, 289 F.3d at 752.

Additionally, in evaluating the surrounding circumstances, we take account of "'subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.'" *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989) (quoting *Bustamonte*, 412 U.S. at 229, 93 S. Ct. at 2049). We also have held that "[a] suspect does not consent to a search of his residence when his consent to the entry into his residence is prompted by a show of official authority." *Ramirez-Chilel*, 289 F.3d at 751.

Application of these factors support the district court's finding that Thompson's consent was voluntarily given. Thompson spoke with Agent Warren prior to his entry, and she permitted him to come inside to discuss the situation further. After Agent Warren explained the circumstances of Boulette's arrest to Thompson, she called her attorney for advice and spoke with him for about ten minutes. Moreover, she allowed Agent Warren to speak with her attorney prior to giving consent. The testimony reflects that Thompson was aware of her right to refuse consent, and only did so after careful consideration and upon the advice of her attorney. Although we have deemed nighttime searches more intrusive than daytime searches and have found that "the assemblage of law enforcement officers at one's door in the middle of the night has a tendency to be more coercive than

9

during the day," *Ramirez-Chilel*, 289 F.3d at 751, n.8, a search conducted late at night does not, standing alone, negate the voluntariness of one's consent to search where the totality of the circumstances demonstrates that consent was voluntary. *See id.*

## IV. CONCLUSION

Because the district court did not clearly err in finding that Thompson consented to the search of their apartment, and that her consent was voluntary, the district court properly denied Boulette's motion to suppress. Accordingly, we affirm his convictions.

AFFIRMED.