[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 24, 2010
JOHN LEY
CLERK

No. 09-12502
Non-Argument Calendar

_____

D. C. Docket No. 07-00066-CR-7-RDP-TMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TATEVIK GEBOYAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 24, 2010)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Tatevik Geboyan appeals her convictions for conspiracy to commit fraud in

connection with access control devices, 18 U.S.C. §§ 1029(a)(3),(a)(4), possession of 15 or more counterfeit and unauthorized access devices, id. § 1029(a)(3), and having custody and control of, trafficking in, and possessing access device-making equipment, id. § 1029(a)(4).  Geboyan argues that she was unlawfully detained by a law enforcement officer during a traffic stop and the district court should have suppressed evidence discovered as a result of that detention.  We affirm.

Geboyan moved to suppress evidence seized from a Jaguar car that she was operating but was owned by the father of her boyfriend, Ghazaros Ghazarosyan. Geboyan did not challenge the legality of the stop, but she argued that she was seized in violation of the Fourth Amendment because she was detained an unreasonable amount of time to complete a traffic citation and the officer lacked reasonable suspicion of criminal activity.  Geboyan also argued that she lacked authority to consent to a search of the car and, in the alternative, she consented to the search unknowingly and involuntarily because she was not told that she could refuse to consent to the search.

The district court held a hearing on the motion to suppress.  The government presented testimony from Lieutenant Tim Pullin, an officer of the Alabama Department of Public Safety, about the traffic stop, his interaction with and observations of Geboyan, Ghazarosyan, and a third occupant of the car, and the

2

consent given by Geboyan to search the vehicle. Geboyan presented a witness who testified that Ghazarosyan was not fluent in English.

The district court denied Geboyan's motion to suppress. The district court credited Pullin's undisputed testimony about his conversations with Geboyan and Ghazarosyan and the circumstances that preceded the search of the car. The court found that Ghazarosyan "understood English well enough to communicate" with Pullin, but Ghazarosyan "did not object to the search." The court ruled that "Geboyan was not detained longer than necessary to process the original traffic citation based upon the unique circumstances of this traffic stop" and that Geboyan had "standing to consent to the search of the vehicle," consented "knowingly and voluntarily," and knew that she had the right to refuse to consent.

Geboyan argues that the duration of the traffic stop was unreasonable, but we disagree. Pullin testified that the traffic stop lasted about 20 minutes. Pullin obtained information from Geboyan's driver's license and talked to Geboyan while awaiting the results of a background check of the car's occupants. Pullin was allowed to detain Geboyan to investigate whether she had a valid driver's license and whether Geboyan or her passengers were sought by law enforcement. See United States v. Purcell, 236 F.3d 1274, 1278 (11th Cir. 2001). The district court did not err when it concluded that the length of Geboyan's detention was

3

reasonable. See id.

Geboyan also argues that Pullin lacked an objective basis to detain her "until she signed the consent to search form," but we disagree. The district court ruled that Pullin had an "articulable suspicion" of wrongdoing to detain Geboyan, but we need not resolve that question because the undisputed testimony in the record establishes that Pullin ended the detention before he requested that Geboyan consent to a search of the car. See United States v. Caraballo, No. 09-10428, slip op. at 13 (11th Cir. Jan. 27, 2010) ("[W]e may affirm the denial of a motion to suppress on any ground supported by the record."). Pullin testified that Geboyan sat in the front passenger seat of the patrol vehicle during the traffic stop and that Geboyan had not been restrained, the doors of the vehicle had remained unlocked, and Geboyan had been free to leave the vehicle. Pullin said that, after he received the results of the background check, he gave Geboyan a traffic citation, her driver's license, and the other documents provided by her passengers. The traffic stop ended when Pullin returned to Geboyan her paperwork. See United States v. Ramirez, 476 F.3d 1231, 1238–40 (11th Cir. 2007).

When Pullin asked Geboyan for her consent to search, "the exchange [had become] cooperative in nature" because Geboyan "had everything [she] reasonably required to proceed on [her] journey." Id. at 1240 (citing United States v. White,

4

81 F.3d 775, 779 (8th Cir. 1996)).  Before Geboyan left the patrol vehicle, Pullin asked Geboyan three times if there was anything illegal inside the Jaguar car. Pullin testified that, in response to his question whether there was marijuana in the car, Geboyan replied jokingly, "I wish," after which she consented to a search of the car and executed a consent to search form.

We also reject Geboyan's arguments that she lacked authority to consent to a search of the car and, if she had authority, her consent was not knowing or voluntary.  Undisputed testimony established that Geboyan had possession of and control over the car.  As the driver, Geboyan could consent to a search of the car. See United States v. Matlock, 415 U.S. 164, 171–72 & n.7, 94 S. Ct. 988, 993 & n.7 (1974); United States v. Dunkley, 911 F.2d 522, 526 (11th Cir. 1990).

Although Ghazarosyan's father owned the car and Ghazarosyan was present and could have consented to the search, Ghazarosyan did not object when Pullin told him that Geboyan had consented to a search of the car.  See Dunkley, 911 F.2d at 526.  Geboyan presented testimony that Ghazarosyan had limited communication skills in the English language, but the record supports the finding of the district court that Ghazarosyan was capable of "interact[ing] intelligently with" Pullin.  United States v. Zapata, 180 F.3d 1237, 1242 (11th Cir. 1999). Ghazarosyan answered Pullin's questions about the trip and, when requested,

5

Ghazarosyan produced proof of insurance and the vehicle registration.

The record also supports a finding that Geboyan consented to a search of the car knowingly and voluntarily. Geboyan told Pullin that he could search the car during a consensual encounter and Geboyan knew from the statements in the consent form that she could refuse to consent. See Purcell, 236 F.3d at 1281–82. The district court did not err by concluding that Geboyan had authority to consent to the search and her consent was "the product of an 'essentially free and unconstrained choice.'" Id. at 1281 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S. Ct. 2041, 2047 (1973)).

We **AFFIRM** Geboyan's convictions.