[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14142
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00504-JSM-AEP-1

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

BRYAN EUGENE PARKER,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 18, 2013)

Before TJOFLAT, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Parker appeals his conviction for knowingly possessing firearms in and affecting interstate commerce after having been convicted of fifteen felonies, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The district court denied his motion to suppress the statements and physical evidence officers obtained from his truck during a traffic stop.  On appeal, Parker argues that: (1) his stop was not based on probable cause to believe that there was a traffic violation, but rather, a desire to search his truck for illegal narcotics; (2) the district court relied solely on a bright-line test it erroneously perceived as established by Whren v. United States, 517 U.S. 806, 813-14 (1996), without analyzing the reasonableness of the officer's actions; and (3) even if this Court finds that Whren sets forth the correct Fourth Amendment analysis for pretextual stops, the decision is limited to run-of-the-mine cases, which Parker's case is not.  After careful review, we affirm.

"Rulings on motions to suppress evidence constitute mixed questions of law and fact."  United States v. LeCroy, 441 F.3d 914, 925 (11th Cir. 2006). Accordingly, we accept the district court's findings of fact unless they are clearly erroneous, but review the application of the law to the facts de novo.  Id.  A finding is clearly erroneous only if we are "left with a definite and firm conviction that a mistake has been committed."  United States v. Maxwell, 579 F.3d 1282, 1305 (11th Cir. 2009) (quotation omitted).  Moreover, "when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the

2

prevailing party below." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000).

The district court may not base its credibility determinations on whether, for example, a witness is a government agent, but should weigh the testimony of all witnesses, taking into account their demeanors and interests, and the consistencies or inconsistencies in their testimonies. See United States v. Ramirez-Chilel, 289 F.3d 744, 749-50 (11th Cir. 2002). However, because the resolution of a credibility dispute is within the district court's province, it will not be reversed for clear error unless the testimony is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it. United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004). Furthermore, we may affirm the denial of a motion to suppress on any ground supported by the record. United States v. Caraballo, 595 F.3d 1214, 1222 (11th Cir. 2010).

A traffic stop constitutes a seizure within the meaning of the Fourth Amendment, which protects against "unreasonable searches and seizures." Delaware v. Prouse, 440 U.S. 648, 653 (1979); U.S. CONST. amend. IV. To satisfy constitutional concerns, a traffic stop requires either probable cause to believe a traffic violation occurred or reasonable suspicion of criminal activity. United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008). When probable cause exists, the only cases where it is necessary to balance other relevant factors

are those involving "searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests -- such as, for example, seizure by means of deadly force . . . ." Whren, 517 U.S. at 818. The standard is an objective one, and an officer's subjective motivation does not invalidate any "otherwise objectively justifiable behavior under the Fourth Amendment." United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999) (quotation omitted).

Where the initial traffic stop is legal, the officer has the duty to investigate suspicious circumstances that then come to his attention. United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991). While generally a stop should last only long enough to process a traffic citation, it may be justifiably prolonged if the officer has a reasonable suspicion or probable cause to believe other criminal activity is afoot. See United States v. Purcell, 236 F.3d 1274, 1277-79 (11th Cir. 2001).

In this case, the district court did not err by denying Parker's motion to suppress. The district court credited Deputy Daniel Joyce's testimony regarding his observation of a window tint violation -- specifically that the tint on the front window went below a certain level on the front window, known as the "AS1" line. Indeed, Joyce testified that after he stopped Parker and explained the reason for the stop, Joyce saw Parker rip the tint off the windshield, while saying he would "take care of that right now." Deputy Mark Curran further confirmed the violation by a

4

radio call prior to the stop. When construed in the light most favorable to the government, Joyce's testimony is neither improbable nor contrary to the laws of nature, particularly given his knowledge and experience with traffic stops.

Moreover, Parker misconstrues Whren by asserting that the district court should have assessed the reasonableness of Joyce's actions in order to determine if the probable cause requirement was met. Whren specifically states that while every Fourth Amendment case involves a reasonableness determination based on a balancing of relevant factors, absent rare exceptions, "the result of that balancing is not in doubt where the search or seizure is based upon probable cause." 517 U.S. at 817. None of the exceptions are applicable to Parker's case, since the search could not be described as extraordinary, or unusually harmful to his privacy or physical interests. Id. The fact that the Hillsborough County Sheriff's Office did not ordinarily issue citations for window tint violations is immaterial. As noted by the district court, the only relevant inquiry is whether the officer's conduct was objectively reasonable, regardless of his subjective intent or motives. See id. at 813-14 (whether the officer's conduct deviated materially from usual police practices, so that a reasonable officer under similar circumstances would not have made the stop, is a subjective consideration).

Likewise, Parker's assertion that his case is not analogous to the run-of-the-mine case outlined in Whren is not supported by the record. Even if the holding in

5

Whren is limited to run-of-the-mine cases, Parker's case would qualify. Unlike in Whren, where the officers were in plainclothes and traveling in an unmarked car, Deputy Joyce was in uniform and in a marked patrol car when he stopped Parker. Id. at 808. An objective analysis of the window tint revealed that it went below the AS1 line, in violation of the statute. Nothing in the record indicates that Parker's stop was anything other than an ordinary traffic stop.

Furthermore, given the need for Deputy Joyce to locate the applicable statute and the later canine alert to narcotics in the truck, subsequently resulting in a search, Parker's stop was not unjustifiably prolonged. See Purcell, 236 F.3d at 1279. Any delay was reasonable and minimally intrusive, particularly since the entire stop only lasted between thirty and forty minutes. Id. (noting that while no rigid timelines have been adopted, we have has approved stops lasting fifty minutes). Therefore, we affirm the district court's denial of Parker's motion to suppress.[1]

**AFFIRMED.**

---

[1] We need not address whether the Hillsborough County's Sheriff's Office reasonably suspected that Parker was engaged in criminal activity at the time of the stop, because the record establishes they had probable cause to believe he had a window tint violation.