[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14475
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00264-AT-JFK-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARMANDO JAIMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 11, 2014)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Armando Jaimez appeals his conviction for conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 2.  On appeal, Jaimez argues that the district court erred in denying his motion to suppress because his consent to search his home was not knowing and voluntary.[1]  After review, we affirm.

## I.  STANDARD OF REVIEW

With respect to a denial of a motion to suppress, we ordinarily review the district court's fact findings for clear error and its application of the law to the facts de novo.  United States v. Martinelli, 454 F.3d 1300, 1306 (11th Cir. 2006).  The voluntariness of a defendant's consent to a search is a factual determination we will not reverse unless it is clearly erroneous.  United States v. Ramirez-Chilel, 289 F.3d 744, 752 (11th Cir. 2002).  Here, however, because Jaimez argues for the first time on appeal that his consent was invalid because it was obtained through trickery and deceit, we review that issue only for plain error.[2]  See United States v. Young, 350 F.3d 1302, 1305 (11th Cir. 2003).  To satisfy plain error review, a defendant must show (1) error, (2) that was plain, (3) that affected his substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of

---

[1]Although Jaimez entered a guilty plea, he reserved his right to appeal the denial of his motion to suppress.

[2]Before the district court, Jaimez argued only that his consent was involuntary in light of the number of law enforcement officers present and, even if it was voluntary, the seizure of the currency exceeded the scope of his consent for the officers to search for drugs and weapons.

the judicial proceedings.  United States v. Moreno, 421 F.3d 1217, 1220 (11th Cir. 2005).

## II.  VOLUNTARINESS OF CONSENT TO A SEARCH

Consent to conduct a search is voluntary if it is the product of an "essentially free and unconstrained choice."  United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (quotation marks omitted).  Voluntariness of consent depends on the totality of the circumstances.  Id.  In evaluating voluntariness, we consider several indicators, including "the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found."  Id.

We have found that consent "induced by deceit, trickery, or misrepresentation" can render consent involuntary.  See United States v. Tweel, 550 F.2d 297, 299 (5th Cir. 1977) (concluding that an Internal Revenue Service revenue agent was deliberately deceptive when he failed to reveal that he was conducting an audit at the request of criminal investigators, which vitiated the defendant's consent to the agent microfilming documents);[3] cf. United States v. Farley, 607 F.3d 1294, 1307-08, 1331-32 (11th Cir. 2010) (concluding that agent's

---

[3]In Bonner v. City of Prichard, 661 F.3d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

initial claim that he was conducting a terrorism investigation did not render defendant's consent to the search of his laptop involuntary because the defendant consented to the search only after a ninety-minute interview, during which the defendant became aware that the true subject of the investigation was child pornography).

### III. JAIMEZ'S CONSENT

Jaimez has not shown that the district court erred, much less plainly erred, in finding that Jaimez's consent was voluntary.

As the district court found, the agents' testimony at the suppression hearing established that Jaimez consented to the search of his home under non-threatening circumstances. At the time, Jaimez had agreed to talk with the officers inside his home, and the officers were sitting with Jaimez at his dining table and were dressed in civilian clothes, with their weapons concealed. The officers did not touch Jaimez or his family, did not handcuff Jaimez, and did not speak harshly, yell, or make threats or promises.

The officers recorded their conversation with Jaimez. According to a transcript of the recording, Sheriff's Deputy Ashley Pope asked Jaimez whether he had any weapons or drugs in his home. Jaimez said that he had a gun in a safe in his bedroom. Deputy Pope then asked, "Do you mind if we – we've got information there may be some illegal stuff in the house. Do you mind if we

4

search?  You have any problems searching?"  Jaimez responded, "No problem."

Deputy Pope further explained, "[W]hat we'd like to do is . . . a search, make sure

nothing's here, okay?  And then . . . we'll sit down and talk to you, kind of tell you

why – why we're here.  Does that sound like a plan?"  Jaimez responded, "Okay."

At the evidentiary hearing, Deputy Pope agreed that he did not seek consent to

search for anything other than weapons or drugs.

Further, Jaimez not only provided his verbal consent to the officers, he

signed a consent form after it was explained to him in Spanish.  That form advised

Jaimez of his right to refuse consent and "that any items found as a result of [his]

consent to this search without a search warrant can and may be used as evidence

against [him] in a court of law."  The officer, who explained the consent form to

Jaimez, testified that he never saw any sign that Jaimez did not understand what

the officer said to him and never heard Jaimez or anyone else ask that the search

stop.

We recognize that, on appeal, Jaimez contends that law enforcement officers

used trickery and deceit by requesting his consent to search his home for certain

items (drugs and weapons), but then seizing other items (such as currency and

personal papers).  Essentially, Jaimez argues that because his understanding of

what the officers were looking for was different than what the officers actually

found, his oral and written consent was not knowing and voluntary.

We reject this claim because the record shows that the officers' actions and statements were not deceptive and did not amount to trickery. Rather, the officers were at Jaimez's house to arrest him pursuant to a federal arrest warrant for his role in a drug trafficking conspiracy, and the officers accurately informed Jaimez what they were looking for. As Deputy Pope testified, the officers only searched places in the home where they could have found drugs and weapons, and, while searching such places, they found and seized any items that were not drugs or weapons, but that were indicative of drug trafficking, such as notepads that appeared to be drug ledgers, plastic bags, and the $50,000 in U.S. currency found in Jaimez's bedroom closet.[4] In light of the consent form Jaimez signed after it was explained to him, it would have been unreasonable for Jaimez to believe that the officers' statements—that they were looking for drugs and weapons—meant, if the officers discovered any other items related to drug trafficking, they would simply look the other way and not seize those items.

In sum, the district court did not err, much less plainly err, in concluding that, under the totality of the circumstances, Jaimez's consent to the search was

---

[4]The officers seized the $50,000 because Jaimez told the officers that it was not his money, that a woman had brought it to him for safekeeping, and that he had agreed to package the money and store it until she returned. Based on Deputy Pope's experience, Jaimez's description of how he obtained the money, the amount of money, and how the money was packaged, Deputy Pope believed the money was related to the drug trade as payment for drug shipments to the United States and was going to be shipped across the Mexican border.

knowing and voluntary.  Accordingly, we affirm the district court's denial of Jaimez's motion to suppress the evidence found during the search.

**AFFIRMED.**