**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cedric PRESLEY, Defendant– Appellant.**

**No. 15–11469 Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

March 14, 2016.

Robert G. Davies, U.S. Attorney's Office, Pensacola, FL, Pamela C. Marsh, Eric K. Mountin, U.S. Attorney's Office, Tallahassee, FL, for Plaitiff–Appellant.

Gary Lee Printy, The Law Office of Gary Lee Printy, Tallahassee, FL, for Defendant–Appellant.

Before ED CARNES, Chief Judge, TJOFLAT, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM.

Cedric Presley entered conditional guilty pleas to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1), and possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1). He contends that the district court erred in denying his motion to suppress drugs, a firearm, and ammunition found in his vehicle.

Officer Kirk Watson was patrolling a neighborhood in Tallahassee, Florida a little before 2:00 a.m. in response to a call from dispatch about a vehicle burglary. During that patrol, he saw a car parked in the driveway of a mobile home. The car's front driver's side door was open. He did not see anyone near the car. He thought that the car might have been burglarized. He decided to approach the car, make sure there were no suspects inside, and then ask the mobile home's resident why the car door was open.

As he approached the front driver's side door, he saw a man slumped in the driver's seat with his head hanging forward. Watson first thought that he was a potential suspect because he appeared to match the description of one of the vehicle burglars. Watson could not tell if the man was sleeping or pretending to be asleep or uncon-

scious. He then saw a handgun on the passenger seat, just to the right of the man's hand. He retreated and called for backup.

After backup arrived, Watson and other officers approached the car. As Watson approached the driver's door, the man sat up and looked at him. Watson told him not to reach for the handgun, ordered him to get out of the car, handcuffed him, and then moved him to the rear of the car. That detention took place at 1:59 a.m. At that point it was unclear to Watson and the officers if the man was one of the burglars or simply the owner of the mobile home who had fallen asleep in his car while parked in his driveway. One of the officers checked his identification card and ran a routine criminal history check. The man turned out to be Presley. The criminal history check, which was completed at 2:13 a.m., showed that he had twelve prior felony convictions.

Presley was arrested for being a felon in possession of a firearm. When Watson picked up the firearm, a pill bottle rolled out from under it. The pill bottle appeared to contain crack cocaine, so the officers searched the entire vehicle and found more crack cocaine, as well as cocaine residue and marijuana.

Presley moved to suppress the drugs, firearm, and ammunition. The district court found that there was no evidence that Presley had participated in the burglary that was the original reason for Watson's patrol. It also found that Presley did not match the descriptions of the vehicle burglars. The court found, however, that Watson had reasonable suspicion to approach an unattended car with an open door at 2:00 a.m. near a neighborhood where a vehicle burglary had just been reported. The court also found that seeing a man slumped over in the driver's seat with a firearm next to him gave Wat-

son additional reasonable suspicion to believe that there was a violation of Florida's firearms law. At that point Watson "took prudent steps to separate ... Presley from the [firearm]," and a routine check showed that Presley was a convicted felon. The court concluded that Watson then had probable cause to arrest Presley. For all of those reasons, the court denied his motion to suppress. This is his appeal.

■ Presley contends that the district court erred in denying his motion to suppress because he was unlawfully detained and was detained for an unreasonable amount of time. "A motion to suppress evidence presents a mixed question of law and fact." *United States v. Lewis*, 674 F.3d 1298, 1302 (11th Cir.2012). We review *de novo* the district court's application of law to facts, and its factfindings for clear error. *Id.* at 1302–03. We construe all facts in the light most favorable to the prevailing party and give "substantial deference to the factfinder's credibility determinations, both explicit and implicit." *Id.* at 1303.

Law enforcement officers can detain a suspect "for a brief, investigatory ... stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir.2011) (quotation marks omitted). Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," but requires "at least a minimal level of objective justification for making the stop." *Lewis*, 674 F.3d at 1303 (quotation marks omitted). We look at the totality of the circumstances in deciding whether reasonable suspicion exists for an investigatory

stop, asking whether the officers have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 1305 (quotation marks omitted).

■ Watson had a "particularized and objective basis" for detaining Presley. *Id.* (quotation marks omitted). He saw an unattended car parked in a driveway around 2:00 a.m. with its door open in a neighborhood adjacent to one where a vehicle burglary had been reported. He had reasonable suspicion to approach the car to investigate the situation. As the district court noted, "[o]ne would not expect an officer to just leave a car sitting there with an open door when there's been a burglary in a nearby neighborhood." After that, he saw Presley slumped over in the driver's seat with a firearm next to him. Florida law prohibits the open carry of a firearm. Fla. Stat. § 790.053(1). A person can legally carry a firearm while traveling in a "private conveyance" only if it is "securely encased." *Id.* § 790.25(3)(*l*). The handgun, which was lying in plain sight on the passenger seat, was not "securely encased." *See id.* § 790.001(17) (defining "securely encased" as in a glove compartment, holster, "zippered gun case," or "closed box or container"). Those facts gave Watson reasonable grounds to believe that Presley was violating Florida's firearms laws. *See Lewis,* 674 F.3d at 1304 (holding that a suspect's "admission to carrying a concealed weapon was sufficient to justify briefly stopping him").[1]

Presley asserts that Fla. Stat. § 790.25(3)(*l*) does not apply to him because he was not actually "traveling" in his car at the time Watson saw him. But the fact that he was sitting in his car with the handgun lying next to him in plain sight could reasonably indicate that he had just violated or was about to violate the law. *See Jordan,* 635 F.3d at 1186. He also asserts that he was not engaged in criminal activity because he was openly carrying the handgun while parked at his residence, which is legal. *See* Fla. Stat. § 790.25(3)(n). But Watson did not know Presley was at his home when he first detained him, and it is "well-settled law that the reasonable suspicion inquiry focuses on the information available to the officers at the time of the stop," not "information [they] might later discover." *Lewis,* 674 F.3d at 1305. Based on all the circumstances of the encounter, Watson was allowed to "detain [Presley] to resolve the ambiguity" of whether he lawfully possessed the handgun. *Id.* at 1304; *see also United States v. Arvizu,* 534 U.S. 266, 277, 122 S.Ct. 744, 753, 151 L.Ed.2d 740 (2002) ("A determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct.").

■ Presley also contends that he was detained for an unlawful amount of time while the officers ran the criminal history check. He argues that he should have been released once the officers saw that his appearance did not match the burglary suspects' descriptions or, at the very least, when they saw that he was parked at his residence. We have upheld requests "for criminal histories as part of a routine computer check" during traffic stops as long as the check does not unreasonably prolong the length of the stop. *United States v. Purcell,* 236 F.3d 1274, 1277–79 (11th Cir. 2001). Detaining Presley for 14 minutes (from 1:59 a.m. to 2:13 a.m.) while they waited for the results of a routine criminal

---

1. Presley contends that the holding of *Lewis* gives officers too much discretion to stop people simply because they are carrying a firearm, but we are bound by that prior panel decision. *See Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.,* 475 F.3d 1228, 1230 (11th Cir.2007).

history check initiated as part of the original investigatory stop was not unreasonable. *See United States v. Boyce,* 351 F.3d 1102, 1107 (11th Cir.2003) (approving routine criminal history checks that are part of the "original traffic stop investigation"); *Purcell,* 236 F.3d at 1279 ("Fourteen minutes is not an unreasonable amount of time for a traffic stop. We have approved traffic stops of much longer duration.").

Watson lawfully detained Presley and detained him for a reasonable amount of time. The district court did not err in denying his motion to suppress the drugs, firearm, and ammunition.

**AFFIRMED.**