The appellant, Robyn Annette Tillman, was convicted of possession of marijuana in the second degree, a misdemeanor. § 13A-12-214, Code of Alabama 1975. She was sentenced to six months' imprisonment in the Baldwin County jail. That sentence was suspended, however, and Tillman was placed on 24 months' unsupervised probation, and was ordered to pay a $300 fine. Because the offense is a misdemeanor, Tillman and the State agreed to go forward with a hearing on Tillman's motion to suppress the marijuana discovered in the search simultaneously with the trial on the offense.
The evidence in this case tended to show the following: On March 19, 1993, Tillman was driving east on Canal Road in Baldwin County. At that time, law enforcement officers Steve Stewart of the Gulf Shores Police Department and Dean McGowan of the Baldwin County Sheriff's Department were assigned as narcotics investigators and were patrolling together. They noticed Tillman's automobile had an expired Mississippi license plate and they stopped her. She produced a valid license plate, but a check on her driver's license showed that it was suspended. Stewart issued Tillman a warning citation for both offenses, then returned her driver's license or identification card to her.
At that point, Stewart testified, Tillman was free to leave. However, he said that at that point he then asked Tillman if she had any drugs or weapons. Tillman said that she did not, Stewart testified. He then asked if he could search her van, and Tillman consented. She did not place any restrictions on what the officers could search. Officer McGowan testified that he searched the van, *Page 9 
and that he found no drugs or weapons. However, he found Tillman's purse lying between the front seats in the van and he searched it. McGowan said that he found a bag of marijuana and a package of rolling papers in the purse, and that he then gave the purse to Stewart, who searched the purse and found a container with some partially burned marijuana cigarettes in it.
 I
Tillman argues that her detention by law enforcement officers and the search of her purse was an illegal search and seizure, in violation of the Fourth Amendment. Specifically, Tillman argues, the police did not have sufficient "reasonably articulable" suspicion to detain her and to search her vehicle, nor did they have the right to search her purse incident to the search of the vehicle.
Tillman's argument assumes that she was in fact being detained when the law enforcement officer asked whether he could search her van. She concedes that the police had a legitimate purpose for stopping her, i.e., that she was driving with an expired Mississippi license plate on her van. However, she maintains that the two law enforcement officers did not have probable cause or reasonable suspicion to investigate any criminal activity beyond the status of her license plate and driver's license.
As the appellant correctly pointed out in her brief:
 "Once the traffic offender signs the [Uniform Traffic Ticket and Citation], the arresting officer is to 'forthwith release him from custody.' § 32-1-4(a)[, Code of Alabama 1975]. The officer may further detain the driver only if he has probable cause to arrest the driver for some other non-traffic offense, see Hawkins v. State, 585 So.2d 154 (Ala. 1991), or has a reasonable suspicion of the driver's involvement in some other criminal activity justifying further detention for investigatory purposes under Terry v. Ohio
[392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], see United States v. Tapia, 912 F.2d 1367 (11th Cir. 1990)."
State v. Washington, 623 So.2d 392, 395 (Ala.Crim.App. 1993). One is in custody if "a reasonable person in the defendant's position would believe that he is not free to leave." Landrethv. State, 600 So.2d 440 (Ala.Crim.App. 1992).
In this case, the officer did release Tillman from custody as soon as she signed the UTTC. At that time, he handed her a copy of the UTTC, as well as the driver's license or identification she had given him. A reasonable person would believe that at that point, he was free to leave. According to both officers' testimony, Stewart then asked Tillman whether she had any drugs or weapons and when she said no, he asked if he could search the van. Tillman consented to the search of the vehicle. A mere request on the part of a law enforcement officer to search a vehicle after pulling the vehicle over for a legitimate purpose does not amount to a detention of the person of whom the request is made, assuming the officer has disposed of the legitimate purpose for which the vehicle was stopped. In addition, consent to the search waives any right to privacy afforded by the Fourth Amendment.Ball v. State, 592 So.2d 1071 (Ala.Crim.App. 1991).
In Washington, this court said there is no constitutional requirement of reasonable suspicion as a prerequisite for seeking consent to search. State v. Washington, 623 So.2d at 397 (quoting State v. Abreu, 257 N.J. Super. 549, 608 A.2d 986,989 (1992) (citing 3 W. LaFave, Search and Seizure § 8.1 at 32 n. 5.1 (Supp. 1992)). We do not agree with the appellant's assertion that our decision in Washington implies that a police officer needs a factual basis, in addition to the legitimate purpose for which the vehicle was stopped, to request the driver's permission to search the vehicle for drugs. Consent searches play an important role in police investigations and should not be limited or restricted to the same extent as investigatory stops and searches under Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "If consent is given, evidence may thereby be uncovered in a situation where there was no other lawful basis for making the search." 3 LaFave,Search and Seizure § 8.1 at 148 (1987). *Page 10 
 " 'Consent searches were deemed to be a "wholly legitimate aspect of effective police activity," for when there is no probable cause they "may be the only means of obtaining important and reliable evidence," and even when there is probable cause a search by consent "may result in considerably less inconvenience for the subject of the search."
" '. . . .
 " 'Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally occur on the highway, or in a person's home or office, and under informal and unstructured conditions. The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning. The police may seek to investigate further suspicious circumstances or to follow up leads developed in questioning persons at the scene of a crime.' "
Ball v. State, 592 So.2d 1071, 1073 (Ala.Crim.App. 1991) (quoting 3 LaFave, Search and Seizure § 8.1(a) (1987)).
Therefore, we hold that Tillman was not being detained after the police officer returned her identification and the signed UTTC. Tillman's consent to the officer's request to search her vehicle after she had been stopped for a legitimate purpose resulted in a legal search of the van, and officials did not have to have reasonable suspicion that Tillman was carrying drugs, weapons, or any other contraband to conduct the search.
 II
Tillman also maintains that her consent was no more than a submission to police authority. Therefore, she argues, her consent was not given freely and voluntarily and the evidence seized in the search should have been suppressed. When consent is relied upon to justify the lawfulness of a search, the State has the burden of proving that the consent was given freely and voluntarily, " 'a burden that is not satisfied by showing a mere submission to a claim of lawful authority.' " Miller v. State, 602 So.2d 488, 491
(Ala.Crim.App. 1992) (quoting Florida v. Royer, 460 U.S. 491, 497,103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)). " '[T]he question whether a consent to search was in fact "voluntary" or was a product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances.' " Miller v. State, 602 So.2d at 491 (quotingSchneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854 (1973)).
In this case, the two law enforcement officers testified that when Stewart asked Tillman if he could search her van, she said that he could. Her statement was sufficient to indicate an intent to waive her Fourth Amendment right. In addition, there is no evidence of coercion or duress by either of the officers. Stewart had already returned Tillman's identification and her UTTC, and, as discussed above, Tillman was not being detained. Stewart simply made a request of Tillman, and she consented to that request. To say that consenting to a police officer's request is merely submitting to that officer's authority when there is no hint of duress or coercion would essentially do away with valid consent searches. Therefore, we hold that Tillman's consent was given freely and voluntarily, and that the police conducted a legal search.
 III
Tillman also argues that even if the search of the vehicle was valid, the search of her purse was not valid because it exceeded the scope of her consent. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno,500 U.S. 248, 251, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991);Bankston v. State, 620 So.2d 115 (Ala.Crim.App. 1992). Generally a general consent to search an area or vehicle, such as the consent given in this case, permits the police to open closed but unlocked containers found in the place as to which consent was given, especially if the police have told the suspect what they are searching for and that object might be concealed in the closed container. 3 LaFave, *Page 11 Search and Seizure § 8.1(c), p. 161 and n. 60 (1987).
In Jimeno, the police told the suspect that they were searching for narcotics, and the suspect consented to a search of his vehicle. The United States Supreme Court held that "the scope of a search is generally defined by its expressed object." Florida v. Jimeno, 500 U.S. at 251, 111 S.Ct. at 1804. Therefore, the Court said, it was objectively reasonable for the police to conclude that the general consent to search the suspect's car included consent to search the containers found inside the car that might hold drugs.
In this case, Stewart told Tillman he was searching for weapons and drugs. When giving her consent, Tillman did not place any restrictions on what could be searched. Using the "objectively reasonable" standard set forth inJimeno, we think it was reasonable for Stewart to conclude that Tillman's general consent to search the van included consent to search her purse, because either weapons or drugs could be contained in the purse.
For the above reasons, the judgment of the district court is affirmed.
AFFIRMED.
All the Judges concur.