PER CURIAM.
The State of Alabama, pursuant to Rule 15.7, Ala. R.Crim. P., appeals the circuit court’s order granting David R. Ellis’s motion to suppress the illegal drugs discovered in his vehicle.
In January 2009, Ellis was indicted for the unlawful possession of a controlled substance and for second-degree possession of marijuana. The circuit court granted Ellis’s motion to suppress and allowed the State to nol-pros the charges.
*43 In June 2009, Ellis was reindicted for the unlawful possession of cocaine, a violation of § 13A-12-212(a)(l), Ala.Code 1975, and for the unlawful possession of marijuana, a violation of § 13A-12-214, Ala.Code 1975. Ellis moved to suppress the drugs that were discovered in his vehicle. On September 14, 2009, the circuit court granted Ellis’s motion to suppress.
The State moved the court to vacate its order because, it said, it was not served with a copy of that order. On September 28, 2009, the circuit court granted the State’s motion to vacate and reissued its earlier order granting Ellis’s motion to suppress. The State filed this appeal pursuant to Rule 15.7, Ala. R.Crim. P., within seven days of the issuance of the new order.[1]
Ellis argued in his motion to suppress that the traffic stop leading to the discovery of the drugs in his vehicle was illegal and that there was no probable cause for his further detention and the search of his vehicle. The State argued that the stop was lawful based on Cpl. Wesley Richer-son’s observance of the vehicle crossing the center line and swerving and that Ellis consented to the search of his vehicle.
At the suppression hearing, the only witness to testify was Cpl. Richerson, a canine handler with the Montgomery County Sheriffs Office. Cpl. Richerson testified that on August 16, 2008, he was checking the grounds at Macon East Academy off Vaughn Road, because there had been several burglaries in the area, when he noticed a vehicle, a Cadillac Escalade, that was later identified as Ellis’s, drive past his location three times. Cpl. Richerson pulled out behind the Escalade and was running the license tag on the vehicle when he observed the Escalade swerve and cross the center line of the road several times. The Escalade then suddenly pulled off the road onto the shoulder and came to a complete stop. Cpl. Richerson pulled in behind the vehicle and activated his emergency lights.
Cpl. Richerson approached the vehicle’s driver side and noticed a strong odor of alcohol on Ellis’s person. Cpl. Richerson asked Ellis if he had been drinking and Ellis replied that he had. Ellis said that he had been talking on his cellular telephone and looking for a residence in the area. Cpl. Richerson radioed for back-up. When back-up arrived he asked Ellis to exit his vehicle so that he could perform several field-sobriety tests and a portable breath test (“PBT test”) on him. The breath test detected the presence of alcohol, but Cpl. Richerson testified that, based on Ellis’s performance on the field-sobriety tests, he did not believe that Ellis was under the influence of alcohol sufficient enough to arrest him for that offense.
*44 Cpl. Richerson further testified that he advised Ellis to contact someone to come and pick him up. Ellis signed his traffic citation. Cpl. Richerson then asked if he could search the Escalade, and, he testified, Ellis gave his consent. Cpl. Richer-son said that if Ellis had responded no, Ellis would have been free to go at that time.
Cpl. Richerson got his K-9 partner, Fax, out of his patrol car and walked the dog around the exterior of the Escalade. Fax alerted for the presence of narcotics on the driver’s door of the Escalade. Cpl. Rich-erson opened the door and allowed the dog to enter the vehicle. The canine then alerted to the presence of contraband in the center console. Cpl. Richerson opened the center console and found cocaine and marijuana.
During questioning by the circuit court, Cpl. Richerson testified that Ellis had a pistol in his vehicle and that he had a permit to carry the weapon. However, there is no testimony as to when Cpl. Richerson was made aware of the pistol— before or after the search of the vehicle was conducted.
The State argues on appeal that the circuit court erred in granting Ellis’s motion to suppress the cocaine and marijuana. Specifically, the State argues that reasonable suspicion or probable cause was not required for Cpl. Richerson to search Ellis’s vehicle because Ellis consented to the search. Ellis argues on appeal that he was seized after the traffic stop was complete; therefore, he argues, his consent was not voluntary.
The circuit court based its ruling on the motion to suppress on the fact that Cpl. Richerson had no reason to ask Ellis for his consent to search the vehicle. The following occurred at the end of the suppression hearing:
“The Court: [WJhat reason are you asking though?
“[Cpl. Richerson]: Well, he’s already—
“The Court: Just to ask?
“[Cpl. Richerson]: No. He’s already—
“The Court: I mean, why are you asking ? You’ve got to have a reason.
“[Cpl. Richerson]: Yes, ma’am.
“The Court: You can’t just everybody who drives up — I mean, I understand you’ve got a K-9 and you can just say, hey, I’ll just ask him for consent to search because I can. I mean, what reason did you have?”
(R. 15.)
As the Alabama Supreme Court stated in State v. Hill, 690 So.2d 1201 (Ala.1996):
“The trial judge made his ruling following a hearing at which he heard oral testimony only from Officer Bailey. We stated in Ex parte Agee, 669 So.2d 102 (Ala.1995):
“ Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).’ ”
“669 So.2d at 104. ‘Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ *45 Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980) (citations omitted). The trial judge’s ruling in this case was based upon his interpretation of the term ‘reasonable suspicion’ as applied to an undisputed set of facts; the proper interpretation is a question of law.”
690 So.2d at 1203-04.
Though Cpl. Richerson’s testimony is confusing at times, there were no discrepancies or factual disputes in his testimony. The only point that was not fully explained at the suppression hearing was whether the friend that Ellis had called was present at the time that Cpl. Richer-son asked Ellis for his consent to search his vehicle. Based on the circuit court’s comments during its questioning of Cpl. Richerson, it appears that this individual had not yet arrived at the scene. Accordingly, we apply the de novo standard of review when reviewing the validity of the circuit court’s ruling in this case. See State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004) (“This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute.”).
“[Bjecause a routine traffic stop is a limited form of seizure, it is analogous to an investigative detention, and we have therefore held that a traffic stop will be governed by the standard set forth in Terry v. Ohio, 392 U.S. 1 [ (1968) ].” J.T.C. v. State, 990 So.2d 444, 447 (Ala.Crim.App.2008).
“ ‘Terry sets up a two-prong test of the reasonableness of investigatory detentions and weapons searches. First, we must decide whether the detention was justified at its inception.... Second, the officer’s actions must be reasonably related in scope to the circumstances which justified the interference in the first place. At both stages, the reasonableness of the officer’s suspicions is judged by an objective standard taking the totality of the circumstances and information available to the officers into account.’ United States v. Johnson, 364 F.3d 1185, 1189 (10th Cir.2004) (quotations and citations omitted).”
United States v. Sanchez, 519 F.3d 1208, 1212-13 (10th Cir.2008).
First, Cpl. Richerson stopped Ellis, he said, because he observed Ellis cross over the center line multiple times while he was driving. Section 32-5A-88, Ala.Code 1975, defines the traffic infraction of “improper lane usage.” “[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation .... ” United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir.1995).
Second, the stop “may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity.” United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir.2001). When Cpl. Richerson approached Ellis’s vehicle, he noticed a strong smell of alcohol on Ellis’s person. “Therefore, when [Cpl. Richerson] smelled alcohol coming from the vehicle [Ellis] had been driving, he had reasonable suspicion to detain [Ellis] in order to investigate.” Miller v. Harget, 458 F.3d 1251, 1259 (11th Cir.2006).
“Following a traffic stop, an officer is not required to close his or her eyes to all offenses that are not traffic related. State v. MacDonald, 253 Kan. 320, 324, 856 P.2d 116 (1993). [The officer] was permitted to concurrently investigate the source of the odor of alcohol and other observable indicia of intoxication, so long as he was diligently pursuing the traffic stop investigation.”
City of Norton v. Stewart, 31 Kan.App.2d 645, 649, 70 P.3d 707, 711 (2003). It is “‘reasonable’ for purposes of the Fourth *46 Amendment for the officer to administer field-sobriety tests as part of that investigation.” State v. McGuigan, 184 Vt. 441, 449, 965 A.2d 511, 516 (2008). “[T]he stop was appropriately extended for the DUI [driving under the influence] investigation, and, concomitantly, the time ‘necessary to effectuate the purpose of the stop’ was appropriately extended.” State v. Nelson, 328 Mont. 510, 517-18, 101 P.3d 261, 267 (2004).
Cpl. Richerson testified that, after he had conducted the field-sobriety tests and after he had finished writing the citation, he immediately asked for Ellis’s consent to search his vehicle. Ellis was not free to drive his vehicle away, he said, because he did not feel that it was safe for Ellis to drive. There is no indication that the stop was unduly long or that Cpl. Richerson’s actions were beyond the scope of the stop.
In Tillman v. State, 647 So.2d 7 (Ala. Crim.App.1994), we held that Tillman’s consent to search his vehicle, which was secured after a routine traffic stop had been completed, was voluntary. We stated:
“In [State v.] Washington, [623 So.2d 392 (Ala.Crim.App.1993),] this court said there is no constitutional requirement of reasonable suspicion as a prerequisite for seeking consent to search. State v. Washington, 623 So.2d at 397 (quoting State v. Abreu, 257 N.J.Super. 549, 608 A.2d 986, 989 (1992)) (citing 3 W. La-Fave, Search and Seizure § 8.1 at 32 n. 5.1 (Supp.1992)). We do not agree with the appellant’s assertion that our decision in Washington implies that a police officer needs a factual basis, in addition to the legitimate purpose for which the vehicle was stopped, to request the driver’s permission to search the vehicle for drugs. Consent searches play an important role in police investigations and should not be limited or restricted to the same extent as investigatory stops and searches under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). ‘If consent is given, evidence may thereby be uncovered in a situation where there was no other lawful basis for making the search.’ 3 LaFave, Search and Seizure § 8.1 at 148 (1987).
“ ‘ “Consent searches were deemed to be a ‘wholly legitimate aspect of effective police activity,’ for when there is no probable cause they ‘may be the only means of obtaining important and reliable evidence,’ and even when there is probable cause a search by consent ‘may result in considerably less inconvenience for the subject of the search.’
[[Image here]]
“ ‘ “Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally occur on the highway, or in a person’s home or office, and under informal and unstructured conditions. The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning. The police may seek to investigate further suspicious circumstances or to follow up leads developed in questioning persons at the scene of a crime.” ’
“Ball v. State, 592 So.2d 1071, 1073 (Ala. Crim.App.1991) (quoting 3 LaFave, Search and Seizure § 8.1(a) (1987)).
“Therefore, we hold that Tillman was not being detained after the police officer returned her identification and the signed [the citation]. Tillman’s consent to the officer’s request to search her vehicle after she had been stopped for a legitimate purpose resulted in a legal search of the van, and officials did not have to have reasonable suspicion that Tillman was carrying drugs, weapons, or *47 any other contraband to conduct the search.”
647 So.2d at 9-10.
The United States Court of Appeals for the Eleven Circuit in United States v. Purcell, 236 F.3d 1274 (11th Cir.2001), further explained:
“An officer conducting a routine traffic stop may request consent to search the vehicle. Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); [United States v.] Simmons, 172 F.3d [775,] 778 [(11th Cir.1999) ]. A consensual search is constitutional if it is voluntary; if it is the product of an ‘essentially free and unconstrained choice.’ Schneckloth, 412 U.S. at 225, 93 S.Ct. 2041. See also Hudson v. J.T. Hall, 231 F.3d 1289, 1296 (11th Cir.2000) (citing United States v. Garcia, 890 F.2d 355, 360 (11th Cir.1989)). In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances. Schneckloth, 412 U.S. at 248-19, 93 S.Ct. 2041. A district court’s determination that consent was voluntary is a finding of fact, that will not be disturbed on appeal absent clear error. Garcia, 890 F.2d at 359 (where voluntariness determined from conflicting testimony, district court’s finding affirmed absent clear error).
“In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant’s cooperation with the officer, the defendant’s awareness of his right to refuse consent, the defendant’s education and intelligence, and the defendant’s belief that no incriminating evidence will be found. Hudson, id.; see also [United States v.] Shabazz, 993 F.2d [431,] 438 [ (5th Cir.1992) ].
“In this case, there was no claim that Officer Warren threatened force or violence against the Purcells or even that he was verbally abusive. Neither was there any claim that Officer Warren suggested to Shon Purcell that he had no right to refuse. Shon Purcell testified that Deputy Warren did not threaten him, and that he told Warren that he could look in the car because T got nothing to hide.’ Based upon these facts, the district court concluded that Shon Purcell voluntarily consented to the search of his vehicle.
[[Image here]]
“The Purcells contend, however, that ... we must hold that the consent was involuntary. They suggest two reasons why. First, Deputy Warren had not returned Purcell’s driver’s license when Purcell consented to the search. Since Purcell was not ‘free to go’ when he consented, the Purcells contend that his consent was involuntary. They also argue that Purcell’s consent was involuntary because Deputy Warren did not specifically inform him that he could refuse.
“We disagree. The Supreme Court has specifically rejected the argument that consent to a search cannot be valid unless the defendant knew that he had a right to refuse the request:
“ ‘While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.’
“Schneckloth, 412 U.S. at 227, 93 S.Ct. 2041. ‘And just as it “would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning,” so too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to *48 search may be deemed voluntary.’ [Ohio v.] Robinette, 519 U.S. [33,] 39-40, 117 S.Ct. 417 [ (1996) ] (citations omitted) (quoting Schneckloth, 412 U.S. at 231, 93 S.Ct. 2041).
“Additionally, whether the officer had returned the driver’s license of the defendant at the time the defendant consented to the search is a factor we shall consider in evaluating the totality of the circumstances, but it is not a litmus test for voluntary consent. See [Florida v.] Bostick, 501 U.S. [429] at 435-36, 111 S.Ct. 2382 [ (1991) ] (even if detainee does not feel ‘free to leave’ under certain circumstances, consent may still be voluntary). The undisputed testimony was that Deputy Warren was giving the citation to Shon Purcell to sign when he asked for and received consent to search the vehicle. Under these circumstances, it was not unreasonable for the officer to continue to have Purcell’s license in his possession. Nor did it indicate anything more than that the citation writing process was not yet complete. We hold, therefore, that Shon Purcell voluntarily consented to the search of his vehicle.”
236 F.3d at 1281-82.
“[T]he question whether a consent to a search is ‘voluntary’ or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.” Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
“No particular factor should be given undue weight in determining the issue of voluntariness. The fact that a defendant was not informed of the right to refuse to consent does not, of itself, negate a finding of voluntariness. Nor does the fact that the defendant was in police custody or that the officers made of showing of force. Kennedy v. State, 640 So.2d 22, 24-5 (Ala.Cr.App.1993), quoting Martinez v. State, 624 So.2d 711, 715-16 (Ala.Cr.App.1993).”
Rokitski v. State, 715 So.2d 859, 861-62 (Ala.Crim.App.1997).
Here, as in United States v. Purcell, there was no claim that Cpl. Richer-son made threats against Ellis in order to secure his consent. There was no testimony that Cpl. Richerson drew his handgun or exhibited any degree of force against Ellis. Ellis had signed the traffic citation before Cpl. Richerson asked Ellis for his permission to search his vehicle, and Ellis had been cooperative during the entire encounter, Cpl. Richerson said. Although Ellis was not free to leave the scene in his vehicle until his friend arrived, he could have walked away. See People v. Robinson, 391 Ill.App.3d 822, 833, 330 Ill.Dec. 519, 909 N.E.2d 232, 244 (2009) (“[E]ven if defendant did not have immediate access to a ride to leave the scene, a reasonable person in the same circumstances still would have felt free to decline the officers’ requests.”).
Based on the totality of the circumstances, we hold that Ellis’s consent was voluntary and that the circuit court erred in granting Ellis’s motion to suppress the drugs found in his vehicle.
Moreover, as the United States Supreme Court stated in Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005):
“[T]he use of a well-trained narco tics-detection dog — one that ‘does not expose noncontraband items that otherwise would remain hidden from public view,’ [United States v.] Place, 462 U.S. [696] at 707 [ (1983) ] — during a lawful traffic stop, generally does not implicate legitimate privacy interests. In this case, the dog sniff was performed on the exterior of respondents’s car while he was lawful *49 ly seized for a traffic violation. Any intrusion on respondent’s privacy expectations does not rise to the level of a constitutionally cognizable infringement.”
“[A] ‘sniff test’ by a drug dog does not come within Fourth Amendment protections.” Seeley v. State, 669 So.2d 209 (Ala.Crim.App.1995).
When the canine, Fax, alerted on the Escalade, probable cause was established to search the vehicle. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). See State v. Montgomery, 968 So.2d 543 (Ala.Crim.App.2006) (“[A]n alert by a trained drug-sniffing dog provides probable cause to search without a warrant.”); United States v. Banks, 3 F.3d 399, 402 (11th Cir.1993) (“[The Eleventh Circuit has] long recognized that ‘probable cause arises when a drug-trained canine alerts to drugs.’ ”).
Accordingly, we reverse the circuit court’s ruling suppressing the marijuana and cocaine discovered in Ellis’s vehicle, and we remand this case to the circuit court for that court to restore the charges against Ellis to its active docket.
REVERSED AND REMANDED.
WISE, P.J., and WINDOM and KELLUM, JJ., concur; WELCH, J„ dissents, with opinion; MAIN, J., dissents, with opinion.

. Ellis argues that this appeal is not correctly before this Court because the notice of appeal was not timely filed. The circuit court’s original order granting the motion to suppress was issued on September 14, 2009. Generally, a court retains jurisdiction to modify any order for 30 days after the order is entered. See Ex parte Bishop, 883 So.2d 262 (Ala.Crim.App.2003). Within 30 days of September 14, the State moved the court to vacate its order because it had not been served with a copy of the order. The circuit court entered a second order vacating the original order on September 25, 2009 — within 30 days of the issuance of its original order. That order was not stamped filed in the circuit clerk’s office until September 28, 2009. ”[T]he date of entry by the clerk, rather than the date the judgment is rendered, should be used when computing the time within which the notice of appeal must be filed.” Ex parte Potts, 814 So.2d 836, 838 n. 1 (Ala.2001). Thus, the State had until October 5, 2009, to file a timely notice of appeal. See Rule 15.7(b), Ala. R.Crim. P., and Rule 4(b)(1), Ala. R.App. P. The State filed its notice of appeal on October 5, 2009; therefore, this appeal was timely filed.