BURKE, Judge.
The appellant, J.D.I., pleaded guilty as a youthful offender to one count of obstructing justice by using a false identity, a violation of § 13A-8-194, Ala.Code 1975. He was sentenced to two years’ imprisonment; that sentence was suspended, and he was ordered to serve one year of supervised probation.[1]
The evidence established that on July 26, 2010, Montgomery Police Officer Lonnie Barnes was on routine patrol in the Dalraida area of Montgomery when he passed a vehicle being driven by J.D.I. *612 Officer Barnes noted that there was a large crack in the windshield running from below the tint line all the way across the windshield diagonally.[2] Officer Barnes testified that he believed that the crack could potentially obstruct J.D.I.’s vision, depending on how he was positioned in the driver’s seat. He also testified that he routinely stopped cars with cracked windshields to advise the drivers of the potential safety issues; he noted that a cracked windshield could easily shatter. Officer Barnes conducted a traffic stop to warn J.D.I. of the potential dangers involved in operating a motor vehicle with a cracked windshield.
Officer Barnes got out of his patrol unit and asked for J.D.I.’s driver’s license and proof of insurance. J.D.I. stated that he did not have a driver’s license. Officer Barnes testified that the traffic stop began to change from that point forward. Officer Barnes asked J.D.I. for his name, but the name he provided was not “on file.” (R. 5.) Officer Barnes then asked J.D.I. for his date of birth; a subsequent check of the database confirmed J.D.I.’s real name and the existence of several outstanding misdemeanor warrants. Officer Barnes was aware of at least one of the outstanding warrants because he had tried to serve the warrant himself. (R. 14.) J.D.I. insisted that the false name he had given to Officer Barnes was, in fact, his real name. Officer Barnes gave J.D.I. an oral warning for the cracked windshield and arrested him.[3]
At the suppression hearing, J.D.I. testified that there was a crack in the windshield that ran diagonally across the windshield. He denied that the crack covered the entire surface of the windshield and denied that the crack obstructed his vision in any way.
Tawanda Thrasher also testified at the suppression hearing. First, she testified that the crack in the windshield extended across the full surface of the windshield, but she denied that it obstructed the driver’s view. She subsequently changed her testimony to state that the crack did not extend over the entire surface of the windshield.
J.D.I. claims that § 32-5-215(a), Ala. Code 1975, which provides that a windshield must be unobstructed, is unconstitutionally vague, and that Officer Barnes’s reliance on § 32-5-215(a), Ala.Code 1975, to justify his traffic stop for the cracked windshield was a mistake of law that could not provide probable cause[4] for the traffic stop that resulted in his arrest.
I.
On appeal, J.D.I. contends that § 32-5-215(a), Ala.Code 1975, is unconstitutionally vague. Specifically, he argues that the statute does not make it a criminal act to drive a vehicle with a cracked windshield.
At the hearing on his motion to suppress, J.D.I. sought to suppress the evidence resulting from the traffic stop. He argued that the statute relied upon by Officer Barnes criminalizes only windshield cracks that obstruct the driver’s *613 view; therefore, because Officer Barnes could not say with certainty that the crack in the windshield obstructed J.D.I.’s view, he should not have been stopped. He argued that because the statute is not phrased conditionally, i.e., “could obstruct the driver’s clear view,” but rather is in the present tense, “obstructs the driver’s clear view,” he did not violate it. Thus, he argued at the hearing, Officer Barnes’s reliance on § 32-5-215(a) to justify the stop of the vehicle J.D.I. was driving was a mistake of law that could not provide reasonable suspicion for the traffic stop that resulted in his arrest. The trial court denied J.D.I.’s motion to suppress, stating:
“I am denying the motion to suppress, [Defense counsel], because the officer had every reason to stop the vehicle. He has testified that the crack went all the way across. He went up there to tell the guy you have a cracked windshield. You know, that is a violation if it obstructs your view, which like you said maybe the court will say that’s not a well-written law. Who knows what obstructs the view means. But we have got what we have got. The officer said it could obstruct his view. He had every reason at that point to say I need to see your driver’s license.
“I agree with y’all. But I am not the one who can make the law about the windshield. That’s got to go down the street. So the appellate courts can tell us. They might agree with you, Richard, and say, yeah, that is a vague law. It is not clear. We need to get rid of that law because I will put on the record we have had a lot of officers lately pulling folks over with cracked windshields. Do they pull everyone over? No. Do they pull you over every time? No. But the point is they are pulling folks over. And we — the courts need some guidance and the police officers need the guidance.”
(R. 39-40.)
Defense counsel argued, “But I just— you know, the law is clear that — it’s clear that it’s got to obstruct.” (R. 40.)[5] The trial court then continued and argued that the statute is unclear and stated that she “want[ed] the [C]ourt [of Criminal Appeals] to go even further and rule on whether someone can just be stopped if we have got just a crack on a passenger side or the muffler example because I would analogize that to just a person walking down the street.”[6] J.D.I. entered a guilty plea to the offense of obstruction of justice, reserving for appeal the issue argued during the hearing.
However, J.D.I. was not convicted of violating § 32-5-215; therefore he lacks standing to challenge its constitutionality.
In Peak v. City of Tuscaloosa, 73 So.3d 5 (Ala.Crim.App.2011), this court analogously stated:
“[B]ecause Peak was never charged with or convicted of violating § 13-51(6) [of the Tuscaloosa Municipal Code], he has no standing to challenge that section. See J.L.N. v. State, 894 So.2d 738, 741 n. 3 (Ala.Crim.App.2002) (‘In addition to challenging § 15-20-26(b), Ala.Code *614 1975, under which he was indicted, the appellant also appears to argue that §§ 15-20-23, 15-20-25, and 15-20-26(a), (c), and (d), Ala.Code 1975, are unconstitutional. However, he was not charged with violating any of those provisions of the [Community Notification Act]. Therefore, he does not have standing to challenge those provisions, and we will not review his constitutional challenges regarding those provisions.’), rev’d on other grounds, 894 So.2d 751 (Ala.2004); and State v. Wilkerson, 54 Ala.App. 104, 105, 305 So.2d 378, 380 (1974) (‘“As a general rule, in criminal prosecutions, accused has the right to assert the invalidity of the law, regulation, or rule under which he is being prosecuted [but] ... [a]n accused affected by one portion of a statute may not plead the invalidity of another portion of the same statute not applicable to his case ... ” ’ (quoting 16 C.J.S. Constitutional Law § 84)). See also Byrd v. State, 78 So.3d 445 (Ala.Crim.App.2009); and Taylor v. State, 442 So.2d 128 (Ala.Crim.App.1983).”
73 So.3d at 11.
Moreover, J.D.I. did not argue that the statute was unconstitutionally vague; his argument addressed whether the facts of his case fell within the purview of the statute, which prohibits driving a vehicle with an obstructed windshield. He argued that Officer Barnes had not proven that the crack obstructed his view, and he also argued that a crack in the windshield did not constitute a “nontransparent material” as required by the statute. In fact, defense counsel argued that the language of the statute was clear and that his facts did not indicate a violation of the unambiguous terms of the statute.
Therefore, the constitutionality of § 32-5-215, Ala.Code 1975, is not properly before this court.
II.
J.D.I. also argues that the State presented insufficient proof that Officer Barnes had reasonable suspicion to effectuate a traffic stop.
“ ‘[B]ecause a routine traffic stop is a limited form of seizure, it is analogous to an investigative detention, and we have therefore held that a traffic stop will be governed by the standard set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 [(1968)].’ J.T.C. v. State, 990 So.2d 444, 447 (Ala.Crim.App.2008).
“ “ ‘Terry sets up a two-prong test of the reasonableness of investigatory detentions and weapons searches. First, we must decide whether the detention was justified at its inception .... Second, the officer’s actions must be reasonably related in scope to the circumstances which justified the interference in the first place. At both stages, the reasonableness of the officer’s suspicions is judged by an objective standard taking the totality of the circumstances and information available to the officers into account.” United States v. Johnson, 364 F.3d 1185, 1189 (10th Cir.2004) (quotations and citations omitted).’
“United States v. Sanchez, 519 F.3d 1208, 1212-13 (10th Cir.2008).”
State v. Ellis, 71 So.3d 41, 45 (Ala.Crim.App.2010). See State v. Davis, 7 So.3d 468, 470 (Ala.Crim.App.2008) (“ ‘ “Reasonable suspicion is a less demanding standard than probable cause,” Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990), requiring only that the detaining officers “have a particularized and objective basis for suspecting the person detained of criminal activity,” Webb v. State, 500 So.2d 1280, *615 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282 (Ala.1986).’ ”).
J.D.I. contends that because having a cracked windshield on one’s vehicle does not violate any law, Officer Barnes should not have stopped him. The prosecutor and Officer Barnes argued that the cracked windshield violated § 32-5-215, Ala.Code 1975, which states:
“§ 32-5-215. Windshields must be unobstructed; windshield wipers; tinting.
“(a) No person shall drive any motor vehicle with any sign, poster, or other nontransparent material upon the front windshield, sidewings, or side or rear windows of such vehicle which obstructs the driver’s clear view of the highway or any intersecting highway.
“(b) The windshield on every motor vehicle shall be equipped with a device for cleaning rain, snow, or other moisture from the windshield, which device shall be so constructed as to be controlled or operated by the driver of the vehicle.
“(c) Every windshield wiper upon a motor vehicle shall be maintained in good working order.
“(d) No person shall operate a motor vehicle which has a windshield, sidewing, or rear window which has tinting to the extent or manufactured in such a way that occupants of the vehicle cannot be easily identified or recognized through the sidewing or rear windows from outside the motor vehicle.
“(e) The provisions of this section shall not apply to the manufactured tinting of windshields of motor vehicles or to certificates of identification, decals, or other papers required by law to be displayed on such windshield or windows.”[7]
Although other statutes dealing with the operation and equipment in automobiles include provisions requiring that automotive parts be properly maintained, there is no such provision for the windshield itself. See, e.g., § 32-5-212 (“All such brakes shall be maintained in good working order....”); §32-5-210 (“No person shall operate any vehicle of a type required to be licensed upon the highways of this state ... when one or more of the tires in use on such vehicle is in unsafe operating condition....”); §32-5-213 (“Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order....); § 32-5-216 (“Every motor vehicle shall at all times be equipped with a muffler in good working order_”); § 32-5-215(c) (“Every windshield wiper upon a motor vehicle shall be maintained in good working order.”).
In fact, the legislature appears to accept the possibility of cracks, without condemning them as illegal, by the language of § 32-5-218, which addresses safety glazing in motor vehicles. Section 32-5-218(b) states:
“(b) The term ‘safety glazing materials’ means glazing materials so constructed, treated, or combined with other materials as to reduce substantially, in comparison with ordinary sheet glass or plate glass, the likelihood of injury to persons by objects from exterior sources or by these safety glazing materials when they may be cracked or broken.”
The clear language of § 32-5-215 addresses the obstruction of windshields due to moisture, tinting, and the application of nontransparent materials on the windshield so that the driver’s clear view is obstructed. It is this latter provision that was argued at trial as justifying the stop of *616 J.D.I.’s vehicle. Despite any possible legislative intent, cracks or dings in windshields are not included as improper obstructions within this statute.
“ ‘The touchstone of- legislative construction is to ascertain and effectuate the intent of the legislature as expressed in the statute.’ Horn v. Citizens Hosp., 425 So.2d 1065, 1070 (Ala.1982) (emphasis added). This Court gives effect to the intent of the legislature as expressed in the plain, unambiguous language of the statute. Jefferson County Comm’n v. Edwards, 32 So.3d 572, 586 (Ala.2009).”
Ex parte Catlin, 72 So.3d 606, 607-08 (Ala.2011) (Cobb, C.J., concurring specially).
“It is a well established principle of statutory interpretation that ‘[w]here the meaning of the plain language of the statute is clear, it must be construed according to its plain language.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1993). ‘Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.’ Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).
“ ‘ “ ‘[Cjriminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed.’ ” United States v. Bridges, 493 F.2d 918, 922 (5th Cir.1974).
“‘“In United States v. Boston & M. RR Co., 380 U.S. 157, 85 S.Ct. 868, 870, 13 L.Ed.2d 728 (1965), the Supreme Court stated:
“ ‘ “ ‘A criminal statute is to be construed strictly, not loosely. Such are the teachings of our cases from United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37 [(1820)], down to this day. Chief Justice Marshall said in that case:
“ ““ “The rule that penal laws aré to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.” Id., p. 95.
“ ‘ “ ‘The fact that a particular activity may be within the same general classification and policy of those covered does not necessarily bring it within the ambit of the criminal prohibition. United States v. Weitzel, 246 U.S. 533, 38 S.Ct. 381, 62 L.Ed. 872 [(1918)].’
“ ‘ “Moreover, ‘one “is not to be subjected to a penalty unless the words of the statute plainly impose it,” Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 [ (1905) ]. “[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.” United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221-222, 73 S.Ct. 227, 229-230, 97 L.Ed. 260 [ (1952) ].’ United States v. Campos-Serrano, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971).”
“ ‘Bridges, 493 F.2d at 923.’ ”
Crawford v. State, [Ms. CR-09-1227, April 29, 2011] — So.3d -, -(Ala.Crim.App.2011).
Alabama state law does not prohibit driving a vehicle with a cracked windshield. Thus, Officer Barnes was mistaken as to the law of the State of Alabama. *617 Moreover, the City of Montgomery does not have an ordinance proscribing driving with a cracked windshield, nor does it have an ordinance allowing an officer to stop a vehicle for safety reasons where no law has been violated.
According to § 27-41, Code of Ordinances, City of Montgomery, Alabama:
“It shall be the duty of the traffic division, with such aid as may be rendered by other members of the police department, to enforce the street traffic regulations of this city and all of the state vehicle laws applicable to street traffic in this city, to make arrests for traffic violations, to investigate accidents and to cooperate with the city traffic engineer and other officers of the city in the administration of the traffic laws and in developing ways and means to improve traffic conditions, and to carry out those duties specially imposed upon such division by this chapter and the ordinances of this city.”
Further, pursuant to § 27-45(a), “[i]t shall be the duty of the officers of the police department, or such officers as are assigned by the chief of police, to enforce all street traffic laws of this city and all of the state vehicle laws applicable to street traffic in this city.” There are no specific ordinances related to the equipment on or operational condition of vehicles in the Code of Ordinances, City of Montgomery. Moreover, neither the Alabama Code nor the Montgomery City Code has a general safety law. Cf. State v. Smith, (No. CA2007-05-064, September 2, 2008) (Ohio Dist.Ct.App.2008) (not reported in N.E.2d) (where law prohibited anyone from driving a vehicle that is in such unsafe condition as to endanger someone, the officer’s statement that the spider crack in the windshield was 1 1/2 feet to 2 feet long, and 12 inches wide, presented safety concerns although “Ohio appellate courts disagree as to whether a crack in the windshield of a vehicle justifies a stop?’ under this law. Mn. Op. at 3). United States v. Sandoval, (No. 1:05CR47 DS, October 5, 2005)(D.Utah, Northern Division) (not reported in F.Supp.2d) (crack in windshield that was over 24 inches long was sufficient to establish probable cause for stop as a safety hazard under Utah Traffic Code); Hilton v. State, 961 So.2d 284 (Fla.2007) (holding that “an officer may stop a vehicle for a windshield crack only if the crack poses a safety hazard. An officer is not authorized under section 316.610 [Fla. Code] to stop a vehicle for just any windshield crack under the ‘not in proper adjustment or repair’ provision of subsection (1).”); State v. Granados, (No. 29,875, February 4, 2010)(N.M.Ct.App.2010) (not reported in P.3d) (officer’s mistake in citing statute prohibiting nontransparent material upon the windshield to justify the stop for a cracked windshield could be ignored because the crack violated the statute prohibiting driving an unsafe vehicle).
Because the traffic stop by Officer Barnes was based on a mistake as to the law, the stop was improper. As the United States Court of Appeals of the Eleventh Circuit stated in U.S. v. Chanthasouxat, 342 F.3d 1271 (11th Cir.2003):
“In the case before us, the officer’s mistake was one of law. Relying on [United States v.] Lopez-Soto [, 205 F.3d 1101 (9th Cir.2000) ] and [United States v.] Lopez-Valdez [, 178 F.3d 282 (5th Cir.1999) ], the Defendants argue that under the Fourth Amendment, an officer’s mistake of law cannot provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop.
“In Lopez-Soto, the officer stopped the defendant because, based on his police academy training, the officer mistakenly believed that the Baja California *618 vehicle code required that each vehicle’s registration sticker be visible from the rear of the vehicle. In fact, the code required that the sticker ‘be placed on the upper right hand corner of the windshield.’ Lopez-Soto, 205 F.3d at 1105 (citing Ley de Transito y Transportes art. 44 (Baha California, Mex.)) (internal quotations omitted). The Ninth Circuit held that the stop ‘was not objectively grounded in the governing law’ and thus was unconstitutional, even though the officer’s ‘mistaken view of the law [was held] in good faith.’ Id. at 1106.
“In Lopez-Valdez, an officer stopped the defendant for a broken taillight. The plastic cover of the taillight was broken, but the bulb itself was intact. 178 F.3d at 284-85. However, because of a previous case regarding the same statute ten years earlier, the Fifth Circuit noted that ‘no well-trained Texas police officer could reasonably believe that white light appearing with red light through a cracked red taillight lens constituted a violation of traffic law.’ Id. at 289. Therefore, the traffic stop was not ‘objectively reasonable.’ Id. at 289 n. 6. In addition, the Fifth Circuit held that the good-faith exception to the exclusionary rule should not be extended to cover an officer’s mistake of law. Id. at 289.
“In the present case, Officer Carter testified that at the time he wrote the citation, he believed, based on information from his training officer and the city magistrate and his history of having written over 100 tickets for ‘improper or no rear-view mirror’ that the Birmingham City Code required vehicles to have inside rear-view mirrors. Despite the government’s arguments to the contrary, we see no ambiguity on the face of either the Alabama statute or the Birmingham ordinance. The Birmingham law merely requires that a driver be able to ‘obtain a view of the street to the rear by looking backward from the driver’s position’ or have ‘a mirror so located as to reflect to the driver a view of the streets for a distance of at least 200 feet of the rear of the vehicle.’ Birmingham City Code § 10-11-5. Under the plain language of this ordinance, drivers who can look backward from the driver’s position to see out a back window would not be required to have any rear-view mirror. But even if a rear-view mirror is required because the driver cannot ‘obtain a view of the street to the rear by looking backward from the driver’s position,’ the ordinance says nothing about requiring that the mirror be on the inside of the vehicle.
“The Alabama statute requires a rear-view mirror, but specifies only that the mirror be ‘so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the rear of such motor vehicle.’ Ala.Code § 32-5-214 (2002). Again, there is no requirement that the mirror be inside the vehicle. Admittedly, the requirement that the driver be able to see 200 feet to the rear of his vehicle creates a question of fact, but since the statute does not assume that this requirement can only be met by an inside rear-view mirror, there is no reason for Officer Carter to make such an assumption. The magistrate’s fee schedule for ‘improper or no rear-view mirror’ also says nothing about requiring an inside rear-view mirror.
[[Image here]]
“In United States v. Miller, 146 F.3d 274, 278 (5th Cir.1998), the Fifth Circuit noted that ‘[i]t should go without saying that penal statutes are to be strictly construed.’ The traffic stop at issue in Miller was based on the defendant’s prolonged use of his left turn signal without *619 turning left or moving into the left lane. Id. at 276. The officer believed this was an infraction and pulled the defendant over. After obtaining consent for a search, the officer found marijuana in Miller’s vehicle. The Fifth Circuit held that, because the defendant’s conduct was ‘not a violation of Texas law, no objective basis for probable cause justified the stop of Miller.’ Id. at 279. Thus, the stop was unconstitutional, and the drug evidence would have to be excluded unless ‘Miller’s consent to the search ... cured the constitutional taint on the evidence.’ Id. The court explained that
“ ‘[t]he rule articulated by the Supreme Court in Whren [v. United States, 517 U.S. 806 (1996) ] provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded.’
“Id. (footnote omitted).”
342 F.3d at 1277-79. Cf. Commonwealth v. Jackson, 71 Mass.App.Ct. 1117, 884 N.E.2d 550 (2008) (officer’s stop for a crack in the windshield was proper although the prosecution did not prove the length of the crack as required by the relevant statute, because Jackson was not charged with that offense; rather the officer’s belief that the statute had been violated supplied the necessary reasonable suspicion to justify the stop).
Moreover, the reasonableness of the officer’s belief as to the law and his good faith in attempting to adhere to the law have been held not to apply to the circumstances like those of this stop. As further stated in Chanthasouxat:
“We agree with the government that taken together, Officer Carter’s training, the city magistrate’s statement to Officer Carter regarding the law, and his history of having written more than 100 tickets for lack of an inside rear-view mirror make Officer Carter’s mistake of law reasonable. The district court credited Officer Carter’s testimony that, for the reasons mentioned, Officer Carter believed that the Birmingham Code required inside rear-view mirrors. We do not question that finding. Furthermore, we note that Officer Carter’s mistake of law was more justified than the mistakes at issue in Lopez-Soto, Lopez-Valdez, and Miller. In Lopez-Soto, the officer’s mistake of law was based only on incorrect police academy training. In Lopez-Valdez, the police officer had the benefit of an identical case from ten years earlier. In Miller, the officer had no objective reason for his mistake of law. In contrast, Officer Carter had not merely been trained that the failure to have an inside rear-view mirror violated the Birmingham traffic code, but in addition, a city magistrate had told him the same thing. Most significantly, he had written more than 100 tickets for this particular ‘violation.’
“Nonetheless, the government’s argument is misguided because it proposes that we ask the wrong question: i.e., whether Officer Carter’s mistake of law was reasonable under the circumstances. We would answer that question in the affirmative. However, the correct question is whether a mistake of law, no matter how reasonable or understandable, can provide the objectively reasonable grounds for reasonable suspicion or probable cause. And to that question we join the Fifth and Ninth Circuits in holding that a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop.
*620 “We also agree with the Fifth Circuit, Lopez-Valdez, 178 F.3d at 289, and the Ninth Circuit, Lopez-Soto, 205 F.3d at 1106, that the good faith exception to the exclusionary rule established by United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) should not be extended to excuse a vehicular search based on an officer’s mistake of law. The Ninth Circuit explained that
“ ‘there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law. To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey.’
“Lopez-Soto, 205 F.3d at 1106 (internal citation omitted). We also note the fundamental unfairness of holding citizens to ‘the traditional rule that ignorance of the law is no excuse,’ Bryan v. United States, 524 U.S. 184, 196, 118 S.Ct. 1939, 1947, 141 L.Ed.2d 197 (1998), while allowing those ‘entrusted to enforce’ the law to be ignorant of it.”
342 F.3d 1271, 1279-80 (11th Cir.2003) (footnote omitted). See also Hilton v. State, 961 So.2d at 294-95 (noting that federal courts have determined that “an officer’s mistake of law as to what constitutes a traffic violation, no matter how reasonable, cannot provide objectively reasonable grounds for reasonable suspicion .... [and] in strict ‘mistake of law1 cases, the conduct that the officer believed to be in violation of the law was not statutorily prohibited”).
Although at least one circuit of the federal courts has determined that “[i]n our circuit, if an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an ‘objectively reasonable one,’ ” United States v. Washington, 455 F.3d 824, 827 (8th Cir.2006), the court acknowledged that
“other circuits have held that a police officer’s mistake of law can never be objectively reasonable. See United States v. McDonald, 453 F.3d 958 (7th Cir.2006) (We agree with the majority of circuits to have considered the issue that a police officer’s mistake of law cannot support probable cause to conduct a stop.’); United States v. Tibbetts, 396 F.3d 1132, 1138 (10th Cir.2005) (‘[F]ailure to understand the law by the very person charged with enforcing it is not objectively reasonable.’); United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir.2003) (no matter how reasonable or understandable a mistake of law, it cannot provide the ‘objectively reasonable grounds for reasonable suspicion or probable cause’); United States v. Twilley, 222 F.3d 1092, 1096 (9th Cm. 2000) (‘[I]n this circuit, a belief based on a misunderstanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop.’); United States v. Miller, 146 F.3d 274, 279 (5th Cir.1998) (where officer was mistaken about law ‘no objective basis for probable cause justified the stop’).”
455 F.3d at 827 n. 1.
Moreover, in Washington, the United States Court of Appeals for the Eighth Circuit addressed a traffic stop based on a cracked windshield where the Nebraska statute prohibited a person from driving a vehicle “with any object placed or hung in or upon such vehicle, except required or permitted equipment of the vehicle, in such a manner as to obstruct or interfere with the view of the operator through the windshield or to prevent the operator from *621 having a clear and full view of the road and condition of traffic behind such vehicle.” 455 F.3d at 826. The court determined that although a crack does not fall within the gambit of the statute, if the officer’s mistake of law was based on objectively reasonable grounds, the stop was proper. In deciding that the officer’s understanding of the statute was unreasonable and that there was no legal justification for the traffic stop, the court stated:
“[W]e are not confronted with any ‘coun-terintuitive and confusing’ motor statutes that might prohibit cracked windshields. Rather, § 60-6,256 clearly does not prohibit the conduct Officer Anton-iak thought it did, and this is an unusual case as the government concedes that no other motor statute or ordinance forbids cracked windshields. Moreover, the government has not presented any evidence of police manuals or training materials, state case law, legislative history, or any other state custom or practice that would create some objectively reasonable basis for the traffic stop.
“Consequently, the district court erred in adopting the magistrate judge’s conclusion that Officer Antoniak’s mistake of law was objectively reasonable based on Antoniak’s ‘training and past experiences of prior traffic citation cases involving cracked windshields.’ There is no evidence that Antoniak was trained by the police department to make stops on the basis of cracked windshields. Antoniak’s own past practices were based on the same mistake of law and do not create a justification for future stops. The district court also erred in adopting the magistrate judge’s statement that the mistake of law was objectively reasonable because it would be reasonable for an officer to believe that having a cracked windshield must violate some traffic law in Nebraska. The concept of an objectively reasonable mistake of law cannot be so unmoored from actual legal authority. Where there is a basis in state law for an officer’s action and some ambiguity or state custom that caused the officer to make the mistake, it may be objectively reasonable. See [United States v.] Martin, 411 F.3d [998] at 1001-02 [ (8th Cir.2005) ]. However, in the absence of such evidence, officers cannot act upon misunderstandings of clear statutes or, worse yet, their own notions of what the law ought to be.”
455 F.3d at 827-28.
In the present case, the State failed to introduce any evidence indicating that Officer Barnes had been trained to make traffic stops based on cracked windshields. Nor was there any other evidence indicating that Officer Barnes’s belief that he could make such a stop was objectively reasonable. Officer Barnes merely testified that he had made many traffic stops based on cracked windshields for safety reasons and because the cracks could have obstructed the drivers’ vision. Therefore, this traffic stop was also improper under the objectively reasonable standard. The stop was not based on a reasonable suspicion that J.D.I. had violated the law or had been involved in criminal activity.
Because the stop was improper, J.D.I.’s motion to suppress should have been granted and the information given as a result of being stopped should have been suppressed. Accordingly, we reverse the ruling and remand the case to the Montgomery Circuit Court.
REVERSED AND REMANDED.
WELCH, P.J., and WINDOM and KELLUM, JJ., concur. JOINER, J., concurs specially.

. J.D.I. was also ordered to pay a $50 assessment to the Alabama Crime Victims Compensation Fund and court costs. Upon full payment of these moneys, J.D.I.’s probation was to be suspended, provided he did not violate the other conditions of his probation.

. Officer Barnes testified that he believed that the crack ran from below the tint line across the windshield, but he was not certain. (R. 24.)

. It is unclear from the record whether Officer Barnes arrested J.D.I. based on the outstanding misdemeanor warrants or for the new offense of obstruction by use of a false identity.

.Although J.D.I. refers to probable cause as the standard to be applied in determining whether the officer could properly affect a traffic stop, reasonable suspicion is the proper standard.

. Section 32-5-215, Ala.Code 1975, entitled "Windshields must be unobstructed; windshield wipers; tinting” states, in pertinent part, that ''[n]o person shall drive any motor vehicle with any sign, poster, or other nontransparent material upon the front windshield, sidewings, or side or rear windows of such vehicle which obstructs the driver's clear view of the highway or any intersecting highway.”

. Although at one point J.D.I. seemed to challenge the constitutionality of the statute, it was on the grounds that it was not consistently applied to all violators. This raises an equal-protection rather than a void-for-vagueness challenge.

. Subsection (d) of this statute was declared to be unconstitutionally vague by this court in Timmons v. City of Montgomery, 641 So.2d 1263 (Ala.Crim.App.1993).